## C.I.T. Corporation *v.* Jonnet, Appellant.

436

Argued October 4, 1965. Before Bell, C. J., Mus-
manno, Jones, Cohen, Eagen, O'Brien and Roberts,
JJ.

*Samuel M. Rosenzweig*, with him *Aaron Rosen-
zweig*, for appellants.

*Joseph A. Katarincic*, with him *Henry W. Fulton,
Jr., Harry Woodruff Turner*, and *Kirkpatrick, Pome-
roy, Lockhart & Johnson*, for appellee.

Opinion by Mr. Justice Musmanno, November 23,
1965:

On January 30, 1961, the Commercial Appliance
Company in Pittsburgh, sold to the Miracle Lanes,
Inc., under a written conditional sales contract, a
quantity of restaurant and bar equipment for the total
sum of $33,655. On the same day, Elmer J. Jonnet,
Jr., in his individual capacity, guaranteed in writing,
as surety, Miracle Lanes' obligations under the con-
tract. The Commercial Appliance Company assigned

its rights against Miracle Lanes and Jonnet to the C.I.T. Corporation, which had financed the transaction.

Through installment payments, Miracle Lanes had, by May 29, 1964, paid $19,322.85, leaving an unpaid balance of $12,197.13. The C.I.T. Corporation brought an action of assumpsit for this sum against Miracle Lanes and Jonnet. The defendants filed an answer averring that, beginning with June, 1964 payments "Were to have been made by Penn Hills Center, Inc. assignee of lease for cocktail lounge in which equipment described in these proceedings is located. To defendants' best knowledge and information and belief by the assumption thereof, arrangements were made whereby defendants herein were released from further liability on the documents herein described."

Apparently aware that such a nebulous defense would quickly melt into a judgment for the plaintiff, the defendants filed an amended answer where the nebulosity of the original answer drifted into a rhetorical cloud of different shape but of no greater tangibility. It said: "Defendants further allege and aver that in June of 1964 when Penn Hills Center, Inc., became assignee of the Lease for the Cocktail Lounge Plaintiff through its authorized agent and representative was apprised thereof and consented thereto and payments were made on account of the security agreement by the assignee to the Plaintiff. Defendants also allege and aver that Plaintiff's authorized agent and representative did release the Defendants from further liability therein."

In short order, the court below, upon appropriate motion by the plaintiff, granted judgment on the pleadings in favor of the plaintiff, plus $1,000 for attorneys' fees, stipulated in the conditional sales contract.

The defendants appealed, contending that their averments "were sufficient to bring into issue the question

of the existence of a subsequent parol agreement between the parties to modify the original written contract by way of a substitution of a party and the release of the original debtor." Nowhere, however, do the defendants allege cancellation by the plaintiff of the express term of the original conditional sale contract that "no waiver or change in this contract or related note, shall bind such assignee (in this case, the plaintiff) unless in writing signed by one of its officers."

This specific condition stands as a stone wall in the path of the defendants' contention. However, they believe they have found a way around this formidable barrier by citing the case of *Kirk v. Brentwood M. H., Inc.,* 191 Pa. Superior Ct. 488, 492 where the Superior Court said that "Even where the written contract prohibits a non-written modification, it may be modified by subsequent oral agreement." This is true but there must first be a waiver of the requirement which has been spelled out in the contract. Otherwise, written documents would have no more permanence than writings penned in disappearing ink. If this, the defendants' argument, were to prevail, contractual obligations would become phantoms, solemn obligations would run like pressed quicksilver, and the whole edifice of business would rest on sand dunes supporting pillars of rubber and floors of turf. Chaos would envelop the commercial world.

The cited *Kirk v. Brentwood* case must be read in connection with our case of *Wagner v. Graziano Construction Company,* 390 Pa. 445, on which it relied. It will be noted that in the *Wagner* case, we first determined that there was a proper allegation of waiver of the contractual provision before determining the propriety of the alleged oral understanding: "In his complaint Wagner averred: 'In directing plaintiff to perform work not within the scope of work to be per-

formed under the written contract, defendant's general superintendent refused to sign written work orders as required by said written contract: he informed plaintiff that written work orders signed by him would not be required and directed him to perform the extra work without the written work orders, informing plaintiff that appropriate adjustments would be agreed upon at a later date.'

"For the purposes of the demurrer, this allegation, together with those averring the superintendent's authority, must be accepted as established fact. Thus, if we assume that the defendant's authorized agent informed Wagner that the requirement for written orders for extra work was being waived, we are *then* concerned only with a determination of the question as to whether parties to a written contract may alter it by oral understanding."

Thus, in the case at bar, there must be a determination of the existence of a waiver of the contractual written provision that all modifications had to be in writing in order to be binding. The mere statement that the lease had been assigned to another and that the plaintiff's agent was apprised of this and payments had been made by the assignee did not indicate any waiver of the contractual provision in controversy. If such a loose and rambling averment were to be accepted as wiping out a solemn stipulation in a written contract, then such stipulations would last no longer than the vapor writings by airplanes in the sky.

Under the pleadings, the court below could do nothing other than conclude that the defendants' allegations were insufficient to constitute a good defense to the plaintiff's claim for the balance due on the contract and properly entered judgment for the plaintiff.

Affirmed.

Mr. Justice JONES and Mr. Justice COHEN concur in the result.