585 A.2d 1123

**DELAWARE RIVER PORT AUTHORITY, Petitioner,**

v.

**Richard L. THORNBURGH, Governor Commonwealth of Pennsylvania and Commonwealth of Pennsylvania Department of Transportation and Thomas Larson, Secretary of Transportation of the Commonwealth of Pennsylvania and The General Assembly of the Commonwealth of Pennsylvania, Respondents.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Plaintiff,**

v.

**DELAWARE RIVER PORT AUTHORITY, Defendant.**

Commonwealth Court of Pennsylvania.

Heard July 26, 1989.

Decided Aug. 25, 1989.

Designated as Opinion to be Reported Jan. 24, 1991.

8

D. Donald Jamieson, with him, Jeffrey Cooper, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, for petitioner.

Michael J. McCaney, Jr., Asst. Counsel, with him, Spencer A. Manthorpe, Chief Counsel, Mark F. Brancato, Asst. Counsel, and Jay C. Waldman, Gen. Counsel, and John M. Hrubovcak, Asst. Atty. Gen., Ward T. Williams, Chief Counsel for Dept. of Transp., and Edward G. Biester, Jr., Atty. Gen., Harrisburg, for respondents.

William E. Woodside, Harrisburg, Sp. Counsel to the House of Representatives.

NARICK, Senior Judge.

Before us for disposition is a petition to enforce settlement filed by the Delaware River Port Authority (DRPA). An evidentiary hearing on the petition was scheduled for

July 26, 1989. Following oral argument of counsel, this Court took under advisement the issue of whether parol evidence should be admitted in order to interpret the November 26, 1986 agreement between DRPA and the Commonwealth of Pennsylvania, Department of Transportation (DOT), which DRPA contends is ambiguous. Because we have concluded that the agreement is not ambiguous, we shall deny the petition without the necessity of hearing the proffered testimony.

On November 26, 1986, DRPA and DOT entered into a settlement agreement in an attempt to resolve two pending cases.[1] The agreement generally provides that DRPA will construct a highway and a road in Philadelphia with the assistance of DOT.

The dispute which is the subject of these proceedings revolves around DOT's agreement, on March 21, 1989, to conduct and fund a hazardous waste study which is necessary to the completion of this project. By letter dated April 4, 1989, DOT rescinded its March 21, 1989 letter on the dual grounds that the individuals who had agreed to fund the study did not have authority to do so and that the parties' 1986 settlement agreement did not require DOT to provide such funding.

DRPA raises several issues for our consideration. It contends that DOT is obligated to fund the hazardous waste study on three alternative theories: 1) under the terms of the parties' 1986 agreement; 2) because of a subsequent modification to the terms of the 1986 agreement; or 3) because of a new agreement.

It is not disputed that the parties' 1986 agreement contains no mention of funding for a hazardous waste study. Further, the agreement contains an integration clause which reads as follows: "Upon execution, this document

1. In 1979, DRPA sued DOT (docketed at 2210 C.D.1979) for breach of its contract to construct a bridge where the Authority had performed its portion of the contract. In 1982, DOT sued DRPA (707 C.D.1982) for failing to make final payment on another project which DOT had completed. DRPA counterclaimed, asserting that it had used the final payment as a setoff against its losses in the 1979 action.

constitutes the entire agreement of the parties and completely expresses the parties' intent and all prior or contemporaneous agreements are hereby merged into this document." DRPA, in arguing that the agreement in fact requires DOT to fund the hazardous waste study, asserts that the agreement is ambiguous on this point, requiring this Court to look to extrinsic evidence in order to interpret it.

The 1986 agreement provides, in relevant part, as follows:

1. There shall be constructed a highway connecting the heretofore constructed ramp from Interstate 95 in the City of Philadelphia with Aramingo Avenue. In addition, a road will be constructed from the aforesaid Aramingo Avenue highway connection to Torresdale Avenue in the City of Philadelphia along a route currently followed by Adams Avenue, in accordance with the plans and specifications to be prepared, approved and filed with [DOT] and [DRPA]. . . .

2. The construction of the aforesaid highways and roadways shall be accomplished by [DRPA] which shall let all contracts for construction.

3. All construction shall be accomplished in accordance with the standards and requirements of [DOT], and officials and employees of [DOT] shall have the right of inspection during construction, and no construction shall be accepted as complete without the approval of [DOT].

4. [DRPA] shall, by contract or with its own forces, undertake to develop and prepare all plans, specifications and estimates (P,S&E) for this project in conformity with the standards and requirements of [DOT] and the Federal Highway Administration. The P,S&E shall be submitted to [DOT] for approval. The P,S&E shall not be deemed to be accepted without the written approval of [DOT's] Deputy Secretary for Highway Administration.

5. [DOT] shall acquire, for the purposes of constructing this project, any and all Federal–Aid Interstate Construction funds available for such construction, without guaranteeing the availability or amount of such Federal–

Aid Interstate Construction funds. As used in this agreement, Federal–Aid Interstate Construction funds are funds made available pursuant to 23 U.S.C. § 104(b)(5)(A).

6. [DRPA] shall apply to the design and construction of this project the money being held by [DRPA] and claimed by [DOT] in [DOT's] aforesaid action in the Commonwealth Court of Pennsylvania at No. 707 C.D. 1982.

7. All costs of the project not paid with Federal–Aid Interstate Construction funds or with the money specified in paragraph 6 above, shall be borne by [DRPA].

8. Within 180 days of the completion of construction of this project, [DRPA] shall provide an accounting to [DOT] of all money applied to this project, specifically including an accounting of the money mentioned in paragraph 6, above. Any of the money specified in paragraph 6 above which is not applied to the cost of design and construction shall be reimbursed to [DOT].

9. [DOT] shall not reimburse [DRPA] for any money expended in the construction of this project, except for the money mentioned in paragraph 6, above.

10. Any property in the possession of the Commonwealth of Pennsylvania which is necessary for the right of way of this project shall be made available to [DRPA] for construction purposes only, without cost to [DRPA].

11. Any additional property which is not owned by [DOT], which is necessary for the construction of this project, shall be acquired by [DRPA], as a Local Public Agency of [DOT], in the name of the Commonwealth of Pennsylvania. Said property shall be paid for out of the money described in Paragraphs 5 and 6 above. Proceedings for acquiring such property shall take place under the Eminent Domain Code, Act of June 22, 1964, P.L. 84, as amended, 26 P.S. Section 1–101, et seq.

12. [DOT] shall seek to acquire the necessary approvals of all local governments and authorities for the construction of this project. [DOT] does not guarantee that all such approvals shall be forthcoming. [DRPA] shall

lend assistance in preparing submittals for all such necessary approvals.

In *Steuart v. McChesney*, 498 Pa. 45, 48–49, 444 A.2d 659, 661 (1982), our Supreme Court summarized the principles to be applied by a court in construing a contract:

> It is well established that the intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement.... As this Court stated in *East Crossroads Center, Inc. v. Mellon–Stuart Co.*, 416 Pa. [229] at 230–231, 205 A.2d [865] at 866 [1965], '[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence.' Hence, where language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended. (Citations omitted, emphasis in original.)

With these principles in mind, we shall examine DRPA's argument with respect to ambiguity. DRPA first contends that "[a] strict 'four corners' approach to the integration of contracts is not required by Pennsylvania law" (Prehearing Memorandum of Law, p. 15), citing *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001 (3rd Cir.1980). It argues that parol evidence is admissible where an agreement is ambiguous in order to resolve the ambiguities and to ascertain the intent of the parties. An agreement is ambiguous if it is reasonably susceptible to different constructions and capable of being understood in more than one sense. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986). DRPA argues that both evidence of the parties' intentions when they drafted the agreement and evidence of their subsequent actions

may be admitted to aid this Court in interpreting the agreement.

We recognize these well established principles of construction when a contract is found to be ambiguous. We have carefully reviewed each of the authorities cited by DRPA and find all to be distinguishable. The common distinguishing factor is the existence, *in the contract* the court was asked to interpret, of a certain word or phrase which was susceptible to different interpretations.[2] We have no such ambiguous language here.

DOT relies upon ¶ 7 of the agreement which clearly and succinctly states that "[a]ll costs of the project not paid with [federal funds] or with the money specified in paragraph 6 above shall be borne by [DRPA]." This is consistent with the general tenor of the agreement, which essentially provides for DOT's assistance to DRPA in DRPA's construction of the highway and road. In contrast to DRPA's obligations under the agreement, which necessarily involve significant expenditures (*e.g.*, ¶¶ 2, 4, 6, 7), DOT's obligations are limited to those of an administrative nature, such as inspecting the work (¶ 3), attempting to acquire federal funding (¶ 5), ensuring rights of way upon Commonwealth land (¶ 10) and seeking necessary approvals from local governments and authorities (¶ 12).

In attempting to craft an ambiguity here, DRPA advances several theories. Firstly, it argues that it can

2. This was the situation in the following authorities relied upon by DRPA: *Pavlich v. Ambrosia Coal & Construction Co.,* 441 Pa. 210, 273 A.2d 343 (1971) (term "marketable" ambiguous); *Fessman Estate,* 386 Pa. 447, 126 A.2d 676 (1956) (contract that was not specifically integrated was ambiguous as to its duration); *Z & L Lumber Co. of Atlasburg v. Nordquist,* 348 Pa.Superior Ct. 580, 502 A.2d 697 (1985) (term "specifications" ambiguous); *Metzger v. Clifford Realty Corp.,* 327 Pa.Superior Ct. 377, 476 A.2d 1 (1984) (meaning of "terminate" ambiguous); *Daset Mining Corp. v. Industrial Fuels Corp.,* 326 Pa.Superior Ct. 14, 473 A.2d 584 (1984) (technical terms used in mining industry ambiguous); *Kohn v. Kohn,* 242 Pa.Superior Ct. 435, 364 A.2d 350 (1976) (meaning of "alimony" ambiguous); *Philadelphia Fresh Food Terminal Corp. v. M. Levin & Co.,* 239 Pa.Superior Ct. 287, 361 A.2d 886 (1976) (lease covenant ambiguous); *Mellon Bank* (meaning of "insolvency" ambiguous); *Silver v. Gene K. Kolber Advertising Inc.,* 518 F.Supp. 939 (E.D.Pa.1981) (phrase "50% of net" ambiguous).

introduce evidence to prove that its proposal to DOT, which formed the basis for the parties' November 26, 1986 agreement, contained a provision requiring DOT to pay for all environmental studies. Further, DRPA contends that DOT must pay for the study because it is now required in order to obtain federal funding. DRPA's arguments ignore the fact that the contract before us is fully integrated. It has not alleged fraud, accident or mistake[3] as it must do in order to permit this Court to look beyond the clear terms of the agreement itself. *See, e.g., LeDonne v. Kessler,* 256 Pa.Superior Ct. 280, 389 A.2d 1123 (1978). What DRPA is attempting to do is to create an ambiguity in this otherwise unambiguous contract using parol evidence, which is barred by the parol evidence rule.[4] *Dahath Electric Co. v. Suburban Electric Development Co.,* 332 Pa. 129, 2 A.2d 765 (1938); *Merriam v. Cedarbrook Realty, Inc.,* 266 Pa.Superior Ct. 252, 404 A.2d 398 (1978). As our Supreme Court stated in *Bardwell v. The Willis Co.,* 375 Pa. 503, 508–09, 100 A.2d 102, 105 (1953):

> If plaintiffs relied on any understanding, promises, representations or agreements made prior to the execution of the written contract ..., they should have protected themselves by incorporating in the written agreement the promises or representations upon which they now rely, and they should have omitted the provisions that they now desire to repudiate and nullify.

Secondly, DRPA argues that it, DRPA, is not obligated, under the terms of ¶ 4, to pay for the hazardous waste study because such studies are specifically excluded from DOT's own definition of "plans." While it may well be that

---

3. Although DRPA's counsel intimated at oral argument that he may try to rescind the agreement on the grounds of mutual mistake of fact or fraudulent inducement, that issue is not presently before us.

4. Similarly, because we find no ambiguity in the agreement itself, we need not consider DRPA's argument that we should look to DOT's subsequent actions as a tool for interpreting DOT's intentions. In the cases upon which DRPA relies for this proposition, the contract itself was found to be ambiguous. *Z & L Lumber; Department of Transportation v. Mosites Construction Co.,* 90 Pa.Commonwealth Ct. 33, 494 A.2d 41 (1985); *Philadelphia Fresh Food Terminal.*

¶ 4 does not obligate DRPA to fund the study, ¶ 7 of the agreement specifically provides that DRPA shall bear responsibility for "all costs" not covered by federal funds or under ¶ 6. Since the agreement does not specifically require DOT to bear the cost of the study, *and* does provide that DRPA will be responsible for "all costs" of the project, the agreement is not ambiguous.

Finally, DRPA urges us to consider ¶ 12 as requiring DOT to fund the study. At argument, its counsel contended that DOT's attorney had "admitted" the ambiguity inherent in the language of ¶ 12, which requires DOT to "seek to acquire the necessary approvals of all local governments and authorities." DOT's counsel had argued that the Federal Highway Administration (FHA) was certainly not a local authority within the meaning of ¶ 12. DRPA's attorney argued that the FHA was an authority and that its approval was necessary to the project and not obtainable without the completion of the hazardous waste study. Even accepting DRPA's position that the word "local" in ¶ 12 does not necessarily modify both "government" and "authorities," and could therefore be viewed as ambiguous, this ambiguity does not relate to the subject of this dispute. Whether or not ¶ 12 obligates DOT to "seek to acquire" FHA approval, it specifically goes on to state that DOT "does not guarantee that all such approvals shall be forthcoming." Accordingly, the clarification of the meaning of this allegedly ambiguous word would not resolve the present dispute over the costs involved. Unlike ¶ 7, a blanket provision imposing "all costs" on DRPA, and ¶ 9, a provision specifically limiting the amount of DOT expenditures, ¶ 12 does not deal with costs. Any alleged ambiguity therein is irrelevant to the matter before us, and we see no need to allow the introduction of extrinsic evidence on this point.

Having concluded that the parties' agreement is not ambiguous and that we will not allow the introduction of the proffered evidence, we now turn to the two remaining issues. DRPA contends that there was either a subsequent

modification of the terms of the 1986 agreement, or a new agreement.

In addressing these issues, we note that the parties' agreement contains a so-called "no oral modification" clause, which provides: "This agreement can only be modified in a writing executed by both parties which expressly states that such writing is intended to modify this agreement." Citing *Levicoff v. Richard I. Rubin & Co.*, 413 Pa. 134, 196 A.2d 359 (1964), *McBride v. Davis*, 266 Pa.Superior Ct. 125, 403 A.2d 125 (1979), and *House of Pasta, Inc. v. Mayo*, 303 Pa.Superior Ct. 298, 449 A.2d 697 (1982), DRPA argues that the parol evidence rule does not apply where subsequent modifications of a contract are at issue. While we agree with that general statement, we note that those cases did not involve contracts containing a clause prohibiting oral modification. Our Supreme Court summarized the general rule applicable to the factual posture of the case before us in *Nicolella v. Palmer*, 432 Pa. 502, 508, 248 A.2d 20, 23 (1968):

> [W]here the writing contains an express provision that it constituted the entire contract between the parties and should not be modified except in writing, the party seeking to show subsequent oral modification in the agreement must prove it by clear, precise, and convincing evidence, as in cases where fraud, accident, or mistake is alleged.

The types of cases in which the above rule has been applied are clearly distinguishable from the facts before us. For example, it has been held that clauses prohibiting oral modification can be waived. This was the situation in *Wagner v. Graziano Construction Co.*, 390 Pa. 445, 136 A.2d 82 (1957), upon which DRPA relies. Therein, the Supreme Court noted the applicability of the waiver doctrine where a contractor was orally directed to perform additional work on the promise of payment and did so. Similarly, in *Universal Builders, Inc. v. Moon Motor Lodge, Inc.*, 430 Pa. 550, 560, 244 A.2d 10, 16 (1968), the

Court upheld a chancellor's decision to disregard the no oral modification clause, noting:

"[T]he effectiveness of a non-written modification in spite of a contract condition that the modifications must be written depends upon whether enforcement of the condition is or is not barred by equitable considerations, not upon the technicality of whether the condition was or was not expressly and separately waived before the non-written modification."

■ Thus, waiver of the clause or the existence of some sort of fraud, mistake, accident or reliance will constitute grounds for looking beyond the contract term prohibiting oral modification. With the exception of the mention of its reliance upon DOT's agreement to fund the study, which we address below, DRPA has not alleged that DOT has waived the contractual clause, or that other equitable considerations are applicable. Its situation is more readily analogized to the facts of *C.I.T. Corp. v. Jonnet*, 419 Pa. 435, 214 A.2d 620 (1965), where the Court affirmed a grant of judgment on the pleadings where there were no allegations that the clause had been waived.

■ DOT asserts that the letter from its engineer constitutes a gratuitous promise to fund the study. DRPA counters that DOT is bound by the acts of its agents, and cites, *inter alia, Department of Transportation v. Westmoreland Engineering Co.*, 63 Pa.Commonwealth Ct. 318, 438 A.2d 1005 (1981) and *Department of Transportation v. Westmoreland Engineering Co., Inc.*, 87 Pa.Commonwealth Ct. 285, 487 A.2d 78 (1985). In those cases, which involved different aspects of the same contract, Westmoreland, a contractor, had entered into a contract with DOT's central office for the final design of a highway. The project was put on hold, and then a district engineer authorized Westmoreland to proceed, *which it did.* This Court held that Westmoreland, which already had a contract for the work it performed, was entitled to rely upon the district office's direction to proceed. The cases are distinguishable on the dual grounds that a prior contract for the work

Westmoreland performed existed and there was actual reliance by Westmoreland upon the district engineer's directive.

Here, DRPA attempts to claim that it has relied to its detriment upon DOT's promise to fund the study, which either constitutes the "equitable consideration" for disregarding the no oral modification clause or establishes the consideration for the new contract it claims exists. The Supreme Court in *Stelmack v. Glen Alden Coal Co.*, 339 Pa. 410, 416, 14 A.2d 127, 129 (1940), explained that this doctrine of promissory estoppel (detrimental reliance) must be cautiously applied:

> The doctrine of promissory estoppel ... may be invoked only in those cases where all the elements of a true estoppel are present, for if it is loosely applied any promise, regardless of the complete absence of consideration, would be enforceable. The principle involved is defined in the Restatement, Contracts, Section 90, in the following terms: 'A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'

Here, the detriment claimed by DRPA is that construction costs have risen while it has *waited* for DOT to fund the study. Thus, the promise did not induce any action on DRPA's part. Nor can DRPA's delay of action for fourteen days (between the original promise and its rescission) be said to constitute "forbearance of a definite and substantial character." Not having alleged waiver of the clause prohibiting oral modification or that it actually relied upon DOT's promise, DRPA has failed to establish either a subsequent oral modification of its original agreement or the existence of a new agreement supported by valid consideration.

For the foregoing reasons, we shall deny DRPA's request to present evidence in support of its petition to enforce the

parties' settlement agreement of November 26, 1986, which petition we hereby deny.

## ORDER

AND NOW, this 25th day of August, 1989, the petition of the Delaware River Port Authority to enforce the settlement agreement dated November 26, 1986, by requiring the Commonwealth of Pennsylvania, Department of Transportation to fund the hazardous waste study at issue herein, is hereby denied.