**HOFF SUPPLY COMPANY, t/a Keeler–Hoff Supply Company, Plaintiff,**

v.

**ALLEN–BRADLEY COMPANY, INC., Defendant.**

No. 4:CV–90–758.

United States District Court, M.D. Pennsylvania.

July 9, 1991.

---

**1.** The Board did not terminate Dr. Stitzell's career. It only extended the monitoring agreement.

J. David Smith, McCormick, Reeder, Nichols, Sarno, Bahl & Knecht, Williamsport, Pa., for plaintiff.

David J. Griffith, Howard M. Cyr, III, Harvey, Pennington, Herting & Renneisen, Ltd., Philadelphia, Pa., for defendant.

## MEMORANDUM

McCLURE, District Judge.

## I. PROCEDURAL HISTORY

This is a contract action based on diversity jurisdiction. Plaintiff Keeler–Hoff Supply Company, Inc. ("Keeler–Hoff") filed a complaint on March 20, 1990 in the Court of Common Pleas of Lycoming County. Subsequently, the defendant, Allen–Bradley Company, Inc. ("Allen–Bradley"), removed the case to the United States District Court for the Middle District of Pennsylvania. On September 8, 1990 the Court granted Allen–Bradley's motion for partial judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), with respect to Count I of the complaint. On November 19, 1990, Allen–Bradley filed a motion for summary judgment on the remaining counts of plaintiff's complaint.

## II. RELEVANT FACTS

The undisputed material facts, as alleged in the pleadings may be summarized as follows:

Keeler–Hoff, a Pennsylvania corporation, is in the business of selling, distributing and dealing in plumbing, heating, electrical and industrial products and related services on behalf of the manufacturers of such products. Allen–Bradley, a Wisconsin corporation, manufactures various electrical and industrial products and sells these products through dealers or distributors.

In 1983 Keeler–Hoff entered into a contractual relationship with Allen–Bradley. The foundation for this relationship is three distributor agreements, two entered into in 1983 and one in 1986, appointing Keeler–Hoff as the distributor of Allen–Bradley products for certain north-central Pennsylvania counties.[1] In the early months of 1989, Allen–Bradley began to express concern to Keeler–Hoff with respect to the sale of its products. As a result of meetings and discussions between representatives of the two companies, a joint sales and marketing plan was developed by Allen–Bradley and subsequently accepted by Keeler–Hoff. The joint sales and marketing plan was communicated to Keeler–Hoff by letter dated June 14, 1989. The plan purported to cover the period from June 1, 1989 to September 30, 1990, and it was represented to Keeler–Hoff that the plan would be used as a benchmark by Allen–Bradley to measure Keeler–Hoff's contract performance during that time period.

By notice dated October 4, 1989, Allen–Bradley terminated all three of its distributorship agreements with Keeler–Hoff effective January 5, 1990. This termination was made pursuant to ¶ 16A of the agreements, which provides:

[e]xcept for the condition set forth in Paragraph 10 hereof, this Agreement shall run for a term of one year from date and shall be automatically renewed from year to year thereafter, provided, however, that either party may terminate

1. As they relate to this cause of action, the relevant provisions of the distributor agreements are identical.

the same at any time, with or without cause, by giving the other party written notice by registered mail not less than ninety (90) days in advance of termination.

After the notice of termination was received, Keeler–Hoff communicated the results of a telemarketing survey dated October 12, 1989 to Allen–Bradley. Also, in November of 1989, Keeler–Hoff's request for a quotation on a project labeled "Stedens" was rejected.[2] Allen–Bradley believed that the Stedens project would require a commitment beyond the January 5, 1990 termination date and exercised what it believed to be its contractual right to refuse to sell products, pursuant to ¶ 16 of the distributor agreements, which states "[i]n the event of any termination of this Agreement, Allen–Bradley shall have the right to cancel any or all unfilled orders."

## III. STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine issue of material fact to be resolved. Fed.R.Civ.P. 56. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. The entire record must be examined in a light most favorable to the non-moving party. *Continental Insurance v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982). If there is no genuine issue of material fact, summary judgment may be granted to the party entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Ac-

cordingly, in order to defeat a properly supported motion for summary judgment, a party may not merely restate the allegations of his complaint. *Farmer v. Carlson,* 685 F.Supp. 1335, 1339 (M.D.Pa.1988). Nor can a party rely on self-serving conclusions, unsupported by specific facts in the record. *Celotex Corp. v. Catrett,* supra, 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273. A non-moving party must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the party fails to provide such evidence, then he is not entitled to a trial and the moving-party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(e).[3]

## IV. DISCUSSION

### A. *Termination of the Contract*

Keeler–Hoff contends that Allen–Bradley, abruptly and without justification, acted in bad faith, in breach of contract, and without good cause in terminating the distributor agreements. Although the agreements specifically state in ¶ 16C that they can be terminated by either party "with or without cause," Keeler–Hoff asserts that this provision is unenforceable because of the obligation of good faith imposed on Allen–Bradley under the Uniform Commercial Code ("U.C.C."). Under Pennsylvania law, however, it is unclear whether the U.C.C. applies to distributor agreements. See *Stanley A. Klopp, Inc. v. John Deere Co.,* 510 F.Supp. 807, 809 (E.D.Pa.1981), aff'd, 676 F.2d 688 (3d Cir.1982) (court stated that if the U.C.C. was not applicable by its own terms, it would apply it by force of analogy); *Artman v. International Harvester Co.,* 355 F.Supp. 482, 486 (W.D.Pa. 1973) (dealership distribution franchises fall within the sales section of the U.C.C.).

---

2. Keeler–Hoff admits that Stedens was a fictitious name used to prevent Allen–Bradley from stealing the project.

3. Keeler–Hoff contends that the motion for summary judgment should be denied because Allen–Bradley is relying on documents, the distributor agreements, which have not been authenticated. However, the agreements, which were submitted by Keeler–Hoff with their complaint as exhibits and were incorporated therein

by reference, are necessarily part of the pleadings and will be considered by the Court for the purpose of resolving the instant motion. Fed. R.Civ.P. 10(c). In addition, in the event of an inconsistency between averments in the complaint and the actual provisions of the agreements, the agreements will prevail. *Evans Products Co. v. J.H. Swanger,* 363 F.Supp. 808, 809 n. 1 (E.D.Pa.1973).

■ Regardless, the court need not decide whether the U.C.C. applies to the instant action because Pennsylvania courts have upheld termination without cause provisions under both the common law, see *Amoco Oil Co. v. Burns*, 496 Pa. 336, 341–42, 437 A.2d 381, 383–84 (1981) (court stated that it was unnecessary to determine whether termination of franchise agreement by petroleum supplier was in good faith because the right to terminate the agreement without cause was expressly reserved by the parties); *Goldinger v. Boron Oil Co.*, 375 F.Supp. 400, 411–12 (W.D.Pa. 1974) (court upheld termination of franchise agreement pursuant to without cause provision), and the U.C.C. See *Artman v. International Harvester Co.*, supra, (applying the U.C.C., court upheld termination without cause provision in dealership agreement); *Weilersbacher v. Pittsburgh Brewing Co.*, 421 Pa. 118, 218 A.2d 806 (1966) (same).[4] Therefore, the termination without cause provision is valid under Pennsylvania law.

### B. *Modification of the Contract*

■ Plaintiff maintains that the joint sales and marketing plan effected a modification of the distributor agreements. Keeler–Hoff argues that the dates covered by the plan in conjunction with statements by Allen–Bradley representatives that the plan was to be used as a benchmark to measure Keeler–Hoff's performance effectively acted as a modification of the agreements extending them to September 30, 1990. However, the agreements provide, in ¶¶ 12 and 18, that no modification will be binding upon Allen–Bradley unless it bears the signature of the president or a vice-president of Allen–Bradley. The joint sales and marketing plan does not meet this requirement. As to the statements made by Allen–Brad-

ley representatives, oral modifications of contracts which expressly provide that modifications may only be made if in writing are unenforceable under both the common law, see *C.I.T. Corp. v. Jonnet*, 419 Pa. 435, 214 A.2d 620 (1965) (no oral modification permitted unless there is a waiver or cancellation of the no oral modification clause), and the U.C.C. See 13 Pa.C.S.A. § 2209(b).[5]

Keeler–Hoff also argues that even if no modification occurred, the attempts at modification led to a waiver of the termination provisions of the agreements under 13 Pa. C.S.A. § 2209(d), which states "although an attempt at modification or rescission does not satisfy the requirements of subsection (b) or (c), it can operate as a waiver." This argument presumes an "attempt at modification". Since there was clearly no attempt on the part of Allen–Bradley to modify the termination date, a waiver could not have occurred under this statute.

### C. *Unfair Competition*

■ Keeler–Hoff contends that the marketing survey submitted to Allen–Bradley after the notice of termination has been used by Allen–Bradley to compete with Keeler–Hoff, and constitutes unfair competition under Pennsylvania law. Keeler–Hoff claims that the marketing survey was submitted to Allen–Bradley at Allen–Bradley's request, with the understanding that it would be utilized to reconsider Keeler–Hoff's dealership termination. It cites *Morgan's Home Equipment Corp. v. Martucci*, 390 Pa. 618, 136 A.2d 838 (1957), for the proposition that customer information constitutes a trade secret which a competitor cannot use without competing unfairly.

Although Keeler–Hoff claims this customer information was a trade secret, it did

4. Keeler–Hoff's reliance on *Skeels v. Universal C.I.T. Credit Corporation*, 335 F.2d 846 (3d Cir. 1964), is misplaced as *Skeels* did not involve a contract with a termination without cause provision.

5. In addition, the agreements themselves require Allen–Bradley to cooperate with the distributor in promoting sales whenever such help becomes necessary or advisable. See ¶ 5B of the distributor agreements. It would be ludi-

crous to assume that this type of assistance by Allen–Bradley, manifested in the instant case by the joint sales and marketing plan, extends the distributor agreements for the period which the assistance is intended to cover. The assumption becomes even more absurd when one considers that Allen–Bradley is most likely to lend assistance to those distributors who are at risk of termination.

not communicate it in a confidential manner. The letter was transmitted after the notice of termination, it gave no indication that the marketing survey was confidential, and it did not list any restrictions on the use of the information. Moreover, this so-called trade secret is merely a marketing survey containing only general information collected by a marketing research firm. This is not the type of confidential customer information contemplated by the court in *Morgan's Home Equipment.*

### D. *Unjust Enrichment*

■ Keeler–Hoff has also asserted a claim for unjust enrichment based on the allegation that prior to the October, 1989, notice of termination Allen–Bradley had already made the determination to terminate its distributor agreements effective January, 1990. Keeler–Hoff argues that Allen–Bradley has been unjustly enriched through its efforts to sell and promote Allen–Bradley products during this period, which now redound to the benefit of Allen–Bradley through the distributor which replaced Keeler–Hoff. This argument lacks merit. Keeler–Hoff seems to be arguing that had it known the agreements would be terminated prior to the notice given by Allen–Bradley its efforts to fulfill its obligations under the agreements would have been somewhat less zealous and effective. Regardless of whether Allen–Bradley notified Keeler–Hoff of its intent to terminate the agreements, the quality of Keeler–Hoff's performance under the agreements, no matter how impressive, can not support a claim for unjust enrichment. See *EFCO Importers v. Halsobrunn,* 500 F.Supp. 152, 158 (E.D.Pa.1980) (quasi-contract doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded on a written agreement or express contract); *Schott v. Westinghouse Electric Corp.,* 436 Pa. 279, 290, 259 A.2d 443, 448 (1969) (same).

### E. *Breach of Contract*

■ Finally, Keeler–Hoff claims that Allen–Bradley breached the distributor agreements by failing to supply Keeler–Hoff for the Stedens project. Allen–Bradley contends that it was permitted under the agreements to refuse to sell products to Keeler–Hoff for the Stedens project because the order was placed after the notice of termination and would require a commitment beyond the termination date of January 5, 1990. This refusal was based on ¶ 16 of the agreements which provides, "[i]n the event of any termination of this Agreement, Allen–Bradley shall have the right to cancel any or all unfilled orders."

While Allen–Bradley contends that the Stedens project could not be completed before the termination date, it offers no evidence to support this contention. Keeler–Hoff, through the affidavit of its president, Samuel Hoff, asserts that it could have completed the Stedens project prior to the termination date had Allen–Bradley acted on the order on a timely basis. In addition, as Keeler–Hoff correctly points out, by its express terms ¶ 16 applies only to Allen–Bradley's right to cancel orders in the event of "termination," it does not state that it applies in the event of "notice of termination." Consequently, ¶ 16 applies only to unshipped orders as of the termination date, January 5, 1990, not the notice of termination date, October 4, 1989.

Therefore, if the Stedens project could have been completed prior to January 5, 1990, a material fact at issue in the instant case, Allen–Bradley may have breached the distributor agreements. Accordingly, summary judgment will be denied on this claim.

We therefore enter the accompanying order.

### ORDER

For the reasons stated in the accompanying memorandum, IT IS ORDERED THAT:

1. Defendant's motion (Record Document No. 50, filed November 19, 1990) for summary judgment, is granted in part and denied in part.

2. Defendant is granted summary judgment on all of plaintiff's claims with the exception of Count III of the complaint, which is based on defendant's alleged breach of contract for failure to supply plaintiff prior to the termination of their

contract. Accordingly, the Court will defer entry of judgment in favor of the defendants and against the plaintiffs on Counts II, IV, V, VI and VII of plaintiff's complaint until the conclusion of this action.