**CONSOLIDATION COAL COMPANY, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF INTERIOR, et al., Defendants,**

**and**

**United States of America, Plaintiff,**

v.

**Consolidation Coal Company, et al., Defendants.**

Nos. C2–94–248, C2–94–785.

United States District Court,
S.D. Ohio,
Eastern Division.

March 25, 1999.

Daniel M. Darragh, Buchanan, Ingersoll, Pittsburgh, PA, for Consolidated Coal Company.

Karen B. Newborn, Baker & Hostetler, Cleveland, OH, Beazer East, Inc.

## OPINION AND ORDER

KEMP, United States Magistrate Judge.

This is an environmental cleanup action which concerns a municipal dump and coal mine waste disposal site located in Belmont County, Ohio, and referred to by the parties as the Buckeye Landfill. As is typical in such actions, a number of different parties, both owners and operators of the site and generators of waste which was disposed of at the site, have become involved in the litigation and in the effort to clean up the site. As is also fairly typical, although there are still a handful of parties who apparently intend to litigate the issue of their proportional shares of the cleanup costs, there have been many settlements entered into by and among potentially responsible parties, including Consolidation Coal Company, an owner/operator of the site, and Beazer East, Inc., a generator of hazardous wastes. As a result of those parties' settlement, a "Stipulation of Partial Discontinuance" was filed on July 10, 1998 which dismissed with prejudice all cross-claims between Consolidation, or Consol, and Beazer. Although the settlement agreement itself was not filed with the Court, the stipulation (which was signed by the Honorable Joseph P. Kinneary, United States District Judge, on July 13, 1998) stated that it was "[b]ased upon" the parties' settlement agreement and that it was "without prejudice to Consol's rights under paragraph 1(k) of the ... Settlement Agreement to reopen settlement with Beazer as provided therein."

On August 12, 1998, Consol filed a motion to enforce the settlement agreement. Although its arguments will be set forth in much greater detail below, for introductory purposes it is sufficient to state that Consol contends that the "reopener" clause of the settlement agreement referred to in the stipulation of partial dismissal has been triggered and permits Consol to revisit the terms of the settlement agreement. The filing of that motion produced a flurry of additional briefing and motions, including a memorandum submitted by Triangle Wire & Cable, one of the other parties to the case, the usual responsive and reply memoranda, a motion by Beazer for leave to file a surreply, a motion by Consol for leave to amend its motion to enforce, and opposing and reply memoranda with respect to that motion. The parties have agreed that, as a result of the nature of the issues raised by the motion to enforce, that motion should be heard and determined by a different judicial officer than the one who will preside over the allocation trial which is still to come. Consequently, they consented to have the matter decided by the undersigned. This Opinion and Order represents the Court's decision on the motion to enforce.

## I.

The facts underlying the parties' dispute are relatively easy to state, although the parties' interpretation of these facts varies greatly. Because the parties' dispute arises out of a settlement agreement, it is logical to begin with a recitation of the central provisions of that agreement.

The settlement agreement was entered into on June 27, 1996, and involved nine parties. It is fair to characterize the agreement as being between Consol, on the one hand, and the other eight parties, Allegheny Ludlum Corporation, USX Corporation, Beazer East, Inc., National Steel Corporation, SKF USA, Inc., Ashland, Inc., Aristech Chemical Corporation, and the Pullman Company, on the other hand.

Those latter eight parties are also defined in the agreement as the "settling parties."

The agreement recited that all of the parties, including Consol, intended to participate in funding and performing a modified remedy at the site in accordance with the terms of a consent decree which was yet to be negotiated with the United States Environmental Protection Agency. It further recited that these parties desired to resolve among themselves all of their claims against each other for cost recovery and/or contribution under CERCLA. In order to do that, Consol agreed to be responsible for performing the obligations required to implement the consent decree, in exchange for receiving 20 percent of the total costs to be incurred with regard to the site from the eight settling parties. The settlement agreement makes reference to the fact that other generator parties would also be expected to contribute in some way to the cost of the remedy, although the contribution of one of them, Wheeling–Pittsburgh Steel Corporation, was capped at 10 percent of the total costs. The issue which will be tried in this case, if no additional settlements are reached, involves allocating costs among Consol, Triangle Wire & Cable, and Neville Chemical Company, a third-party defendant.

The settling parties' 20 percent share of the total costs was subdivided into shares of each settling party. Beazer's share was 4.00 percent, as reflected on Exhibit A to the settlement agreement, although Exhibit A–1 purported to show a "more accurate volumetric allocation of the 20 percent aggregate share among the settling parties...." Settlement Agreement, ¶ 1(k). On that exhibit, Beazer's share is 4.02 percent. Although apparently not set forth in the settlement agreement itself, the parties agree that Beazer's share was calculated based upon a belief that it contributed 1,195 tons of waste to the landfill, which represents 3.28 percent of the total volume contributed by the settling parties, Wheeling Pitt, and Triangle. *See* Appendix to Consolidation Coal Company's Mem-

orandum in Support of Motion to Enforce Settlement Agreement Against Beazer East, Inc., Exhibit C.

Of central importance to this dispute is the language that the parties chose to include in paragraph 1(k) which, under certain circumstances, gave Consol the right to reopen the settlement agreement and provided for a recalculation of the percentage share to be allocated to the settling parties. The pertinent language is as follows:

"This settlement is subject to a reopener by Consol against any Settling Party if it is concluded in the judicial allocation proceeding that any such Settling Party has understated its volumetric contribution to the Site, excluding waste that does not contain hazardous substances, by an amount shown to be .2 percent greater than the larger share attributable to any Settling Party as set forth on either Exhibit A or Exhibit A–1 attached hereto.... Upon execution of this Agreement, the Settling Parties shall provide Consol with all data used to prepare the volumetric allocation set forth on Exhibit A attached hereto and all available information concerning the character and the amount of wastes containing hazardous substances allegedly contributed by each Settling Party to the Site."

The meaning of some of the language contained in this "reopener clause" is not in dispute. The greater share attributable to Beazer East on either Exhibit A or Exhibit A–1 is 4.02 percent, so that if, pursuant to the reopener clause, Beazer's share is actually determined to be more than 4.22 percent (which is .2 percent greater than the share shown on Exhibit A–1), the settlement is subject to a "reopener ...." Beyond that, the parties disagree sharply on what sort of event triggers Consol's right to a "reopener" and, if that right has been triggered, what it means to possess a right of "reopener." Before describing the position taken by the respective parties on these issues, the Court must first address the question of whether it has jurisdiction to hear the merits of this dispute. Beazer contends that jurisdiction is lacking, while Consol argues that the Court may, under various theories, including those set forth in its motion to amend its motion to enforce the settlement agreement, decide the merits of this dispute. The Court agrees with Consol that jurisdiction exists to do so, but, as set forth below, reaches that conclusion for different reasons.

## II.

The parties have briefed extensively the question of whether the Court has jurisdiction to decide whether Consol's right to reopen the settlement agreement has been triggered. Consol's original motion and memorandum assumes that the Court has such jurisdiction, because that issue is not mentioned. In Beazer's response, although jurisdictional language is not employed, Beazer asserted that the motion was procedurally inappropriate because Beazer was no longer a party to the case due to the filing of the stipulation of dismissal and that Consol had never filed an appropriate pleading seeking declaratory relief. In Consol's reply, it asserted that the Court had inherent authority and equitable power to enforce a settlement agreement arising out of the litigation before it, and that the granting of declaratory relief in the form of an interpretation of the agreement was therefore procedurally appropriate. In its surreply, Beazer took issue with that assertion, contending that under *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), district courts lack the inherent power to interpret and enforce settlement agreements arising out of litigation unless an independent jurisdictional basis for hearing such issues existed or unless the Court explicitly retains jurisdiction to resolve issues arising under the settlement agreement. In response to that argument, Consol moved for leave to amend its motion to include, as jurisdic-

tional bases for the Court's resolution of this issue, Fed.R.Civ.P. 60(b) and ancillary jurisdiction. The jurisdictional issue then became pre-eminent in the subsequent briefs, although Beazer also advanced independent arguments why, even if Rule 60(b) provides an adequate basis for the Court's power to review Consol's claims, the requirements of that rule have not been satisfied.

Both Beazer and Consol appear to assume that *Kokkonen* and its progeny provide the appropriate decisional rules for the matter which is presented here. *Kokkonen* addressed the question of when, if ever, a district court has the power to determine if a party to an action previously pending before that court has breached a settlement agreement through which the case was dismissed. In *Kokkonen,* the parties, after settling their dispute, filed a stipulation and order of dismissal with prejudice. Approximately a month later, after the parties disagreed over certain items addressed by the settlement agreement, one of them moved the district court to enforce the agreement. The opposing party asserted lack of subject matter jurisdiction. The district court concluded that it had inherent power to enforce the settlement agreement notwithstanding the fact that the order dismissing the case neither referred to the settlement agreement nor expressly reserved jurisdiction to the district court to resolve disputes arising thereunder. The Court of Appeals affirmed, but the Supreme Court took a different view.

The Court's opinion begins by noting that the party asserting that jurisdiction existed has the burden of so demonstrating, and that neither Rule 41, pursuant to which the case had been dismissed, nor any other provision of law contained a grant of jurisdiction to hear disputes arising out of the settlement agreement. As the Court noted, "Enforcement of the settlement agreement ... whether through award of damages or decree of specific performance, is more than just a continua-

tion or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen,* 511 U.S. at 378, 114 S.Ct. 1673. The Court specifically rejected the proposition that ancillary jurisdiction extends to a motion to enforce a settlement agreement filed after the case has been dismissed. It did note that courts sometime allow an action to be reopened pursuant to Rule 60(b)(6) when a settlement agreement has been breached, but that such reopening of the suit allows the court to address the originally-filed claims rather than claims arising from the settlement agreement. *Kokkonen* noted that retention of jurisdiction could be a condition of dismissal either awarded by the Court or agreed upon by the parties, but "[a]bsent such action .. enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.,* 511 U.S. at 382, 114 S.Ct. 1673. *Kokkonen* has, of course, been followed in this Circuit. *See, e.g., Futernick v. Sumpter Township,* 78 F.3d 1051, 1055 n. 4 (6th Cir.1996).

■ In the Court's view, by focusing on *Kokkonen,* the parties have not addressed the correct issue. Although a stipulation of dismissal was filed by Consol and Beazer and subsequently approved by the Court, that dismissal entry did not terminate the Court's jurisdiction over the subject matter of the dispute between those parties. Rather, the larger dispute concerning the proper allocation of responsibility for the response and cleanup costs of the Buckeye landfill remains pending for adjudication, and the dismissal order was clearly interlocutory. As such, it is subject to vacation at any time by the Court for reasons which do not have to satisfy any of the provisions of Rule 60(b).

■ Fed.R.Civ.P. 54(b) makes it clear that an order which dismisses fewer than all claims or fewer than all parties to a lawsuit is, absent an express determination by the Court that there is no just reason for delay and absent an express direction

for the entry of judgment, a non-final order. Such an order "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R.Civ.P. 54(b); *see also Moody v. Kapica,* 548 F.2d 133 (6th Cir.1976) (*per curiam*). It is black-letter law that "[u]ntil final decree the court always *retains jurisdiction* to modify or rescind a prior interlocutory order." *Lindsey v. Dayton–Hudson Corp.,* 592 F.2d 1118, 1121 (10th Cir.), *cert. denied* 444 U.S. 856, 100 S.Ct. 116, 62 L.Ed.2d 75 (1979).

■ This rule explicitly applies to the dismissal of all claims against a particular party, so long as claims against other parties remain for adjudication, *see James by James v. Sadler,* 909 F.2d 834 (5th Cir. 1990), and to dismissals under Rule 41(a)(2) predicated upon a settlement agreement, *see Covey v. C.I.T. Corp.,* 71 F.R.D. 487, 490 (E.D.Okla.1975) ("An adjudication upon a Rule 41(a)(2) Motion as to less than all of the multiple parties, is interlocutory and subject to revision until the date of adjudication of the remaining claims or parties."). Moreover, because such an order is interlocutory, a Rule 60(b) motion is neither available nor appropriate, because Rule 60(b) permits the Court to grant relief only from "final" judgments or orders. *See Wanamaker v. Columbian Rope Co.,* 907 F.Supp. 522, 526 (N.D.N.Y. 1995), *aff'd* 108 F.3d 462 (2nd Cir.1997); *Krome v. Merrill Lynch & Co.,* 110 F.R.D. 693, 694 (S.D.N.Y.1986).

■ Here, there has been no final order or judgment resolving the dispute between Consol and Beazer, but only an interlocutory dismissal entry which is subject to revision by the Court at any time. Consequently, this Court concludes that it has the power to adjudicate the current dispute between Consol and Beazer even if the settlement agreement was not expressly incorporated into the dismissal entry, and even if the dismissal entry did not expressly reserve jurisdiction to the Court, because it never lost jurisdiction over the

original dispute between those parties. In other words, where an order of dismissal is merely interlocutory, no reservation of jurisdiction over the parties' dispute is needed because jurisdiction has never been lost.

Resolving the jurisdictional issue in this fashion does not necessarily answer the question of whether the Court should grant Consol any relief. There are two different types of relief which could be granted under these circumstances. First, the dismissal entry could simply be vacated, and the parties could be restored to their pre-settlement positions. The issue of their respective liability for the clean-up would then be determined in the allocation trial. Conversely, the Court could conclude that in the settlement agreement the parties reached a meeting of the minds which defines their rights and obligations even under the changed circumstances which Consol alleges to exist, and it could therefore "enforce" the settlement agreement and "declare" the rights and obligations of the parties thereto.

There is clearly subject matter jurisdiction to do the former, because the Court would simply be reinstating claims and cross-claims arising under CERCLA. The Court's ancillary jurisdiction would also permit it to adjudicate whether the parties have settled their CERCLA claims, especially where the terms of the settlement may require an adjudication of the proportionate share of waste contributed to the site by potentially responsible parties. *See, e.g., Kokkonen,* 511 U.S. at 379–80, 114 S.Ct. 1673 (ancillary jurisdiction permits a single court to dispose of claims which are factually interdependent.). If a Court may, by expressly retaining jurisdiction following the final dismissal of a case, decide issues arising under a settlement agreement when no other independent basis for doing so exists, it certainly can do so when jurisdiction over the parties' dispute has never been surrendered in the first instance. With the jurisdictional issues thus resolved, the Court turns to the issue of whether Consol is entitled to set

aside the interlocutory order of dismissal or to some other relief under the terms of the settlement agreement.

### III.

The decision to vacate an interlocutory order dismissing a claim or a party, while not strictly subject to those factors set forth in Rule 60(b), must nevertheless be based upon good and valid reasons. Although the Court has plenary power in this regard, *see Covey v. C.I.T. Corp.*, 71 F.R.D. at 490, even when the interlocutory order of dismissal has been reached by agreement of the parties, *see Webster Motor Car Co. v. Zell Motor Car Co.*, 234 F.2d 616, 618 (4th Cir.1956), the Court should limit the exercise of its power to the extent "necessary to the proper administration of justice." *Id.; see also Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir.1985).

In this case, whether the interests of justice favor vacating the dismissal entry depends upon whether there is any merit to Consol's argument that events have occurred which permit it to reopen the settlement agreement. If the settlement agreement still validly calculates Beazer's proportionate share, there is no reason why the dismissal entry should be vacated or why Consol is entitled to any other relief. On the other hand, if something has happened to trigger the "reopener" provision, the Court should decide what type of relief Consol is entitled to under the terms of the agreement. Essentially, the issue of whether there is cause to vacate the dismissal order and the issue of whether Consol has presented at least an arguable claim for relief are identical. Consequently, the Court now turns to the merits of Consol's claim that the "reopener" provision of the settlement agreement has been triggered by those events described in its motion to enforce.

The basis of Consol's motion to enforce the settlement agreement can be stated simply. The settlement agreement was signed on June 27, 1996. At that point,

Consol asserts that all parties believed in good faith that Beazer contributed approximately 1,195 tons of hazardous waste to the Buckeye Landfill. Subsequently, discovery was taken from the Mays Corporation, a transporter of hazardous waste. According to Consol, although Mays was originally identified as the transporter for waste generated by third-party defendant Neville Chemical Co., Mays also transported waste for Beazer. Consol now claims to have evidence that Beazer's total amount of waste contributed to the site was in excess of 4,900 tons. If the same formula, but the new tonnage figure, were used to calculate Beazer's share, Beazer's share of the total costs of remediation would be 12.9 percent. Since that is more than .2 percent in excess of Beazer's current share, Consol asserts that the reopener provision has been triggered. Consequently, it seeks a declaration not only that the agreement is now subject to revision, but that the specific revision which should be ordered is that Beazer's share of the total costs is to be calculated using the same allocation formula set forth in paragraph 1(a) of the agreement, based upon a precise calculation of Beazer's share at the allocation trial. Consol also seeks a declaration that it is not obligated to defend or indemnify Beazer with respect to any claim asserting that Beazer's waste exceeds 1,195 tons—a claim which would appear to come from either Triangle or Neville, the only other remaining parties.

Beazer presents an entirely different interpretation of the same language in the settlement agreement. Focusing specifically on the language in paragraph 1(k), Beazer asserts that any right to reopen the settlement agreement accrues, if at all, only after it has been concluded in "the judicial allocation proceeding" that Beazer understated its volumetric contribution of wastes. Beazer equates the language "judicial allocation proceeding" with the trial which has yet to occur, and which may never occur, and asserts that unless and until there is a trial in this case and Beaz-

er's volumetric contribution is determined at that trial, Consol has no right to ask to reopen the settlement agreement. Beazer also argues that if any recalculation of its share is to be done, there is no reason to apply the same formula set forth in paragraph 1(a) in the settlement agreement. Rather, the Court would be free to reallocate Beazer's share in any way it deemed appropriate. Finally, Beazer asserts that the reopener provision and Consol's agreement to defend and indemnify Beazer are not interlinked, and that no matter how the Court rules on the issue of reopening, Consol is still required to indemnify and defend Beazer against claims of other parties as set forth in paragraph 1(l) of the settlement agreement.

The Court begins by stating the legal principles applicable to the interpretation of the settlement agreement. In paragraph 13, the agreement states that it "shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania...." The laws of the Commonwealth of Pennsylvania concerning contract interpretation are as follows.

■ Generally speaking, of course, "[a]bsent illegality, unconscionableness, fraud, duress, or mistake the parties are bound by the terms of their contract." *Mellon Bank, N.A. v. Aetna Business Credit,* 619 F.2d 1001, 1009 (3rd Cir.1980), citing, *inter alia, Peter J. Mascaro Co. v. Milonas,* 401 Pa. 632, 166 A.2d 15 (1960). In ascertaining what the terms of the contract are, the Court is required to bind the parties "by the objective manifestations of their intent." *Id.* "The strongest external sign of agreement between contracting parties is the words they use in their written contract". *Id.* When those terms are clear and unequivocal, the Court may not consider additional, or parol evidence as an aid to interpretation. *Id.* at 1010; *see also National Cash Register Co. v. Modern Transfer Co.,* 224 Pa.Super. 138, 143, 302 A.2d 486, 488 ("when the language is clear, there is no need for interpreta-

tion...."). In other words, Pennsylvania follows the traditional parol evidence role. *Id.*

■ Under Pennsylvania law, an agreement is ambiguous, and thus susceptible to interpretation through parol evidence, "if it is reasonably susceptible to different constructions and capable of being understood in more than one sense." *Delaware River Port Auth. v. Thornburgh,* 137 Pa.Cmwlth. 7, 12, 585 A.2d 1123, 1126 (1989). In making that determination, the Court must consider "the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." *Mellon Bank,* 619 F.2d at 1011. After so doing, if the Court finds no ambiguity, the contract is interpreted and enforced according to its sole reasonable meaning. Otherwise, the Court must determine, if there is an ambiguity, what type of procedure, including a full evidentiary hearing, would be appropriate to permit the ambiguity to be resolved. In all cases, the Court must insure that interpretation of the contract does not turn into alteration of the parties' intent.

There are two discrete questions posed by Consol's motion. The first is when the "reopener" provision is triggered. The second is what relief might be available to Consol if the provision is triggered. Logically, the questions are properly addressed in that order.

■ The language used by the parties with respect to the conclusive nature of the settlement agreement is not ambiguous. It clearly permits the settlement agreement to be reopened by Consol under certain circumstances, and Beazer does not argue otherwise. Both parties also agree that the right to reopen is conditional. Thus, the first question the Court must address is whether the settlement agreement unambiguously expresses the condition which must occur in order for Consol to be entitled to reopen the settlement agreement.

The language used by the parties bears repeating. The "reopener" is triggered "if it is concluded in the judicial allocation proceeding that any ... Settling Party has understated its volumetric contribution to the Site ... by an amount shown to be .2% greater than the larger share attributable to any Settling Party as set forth on either Exhibit A or A(1)...."

The concept of what it means for a party to understate its volumetric contribution to the site is unambiguous. The specific volumetric contributions which form the basis of the settlement agreement are set forth on the attachments in terms of volumes of hazardous waste. Consequently, it is clear that if a party is deemed, in a fashion which satisfies the terms of the settlement agreement, to have understated that contribution, the agreement can be reopened. Thus, the dispute, if any, must center around the interpretation of the phrase "if it is concluded in the judicial allocation proceeding...." For the following reasons, the Court finds that this phrase is ambiguous and that further proceedings are necessary to determine exactly what the parties intended when they chose that language.

Consol, by asserting that it currently possesses a right to reopen, is necessarily applying a broad interpretation to both pertinent parts of the phrase in dispute. The first part of the phrase requires that it "be concluded" that an understatement of the volumetric contribution has occurred, and the second part requires that such conclusion be reached in "the judicial allocation proceeding." Consol's interpretation places no limits on who it is that may "conclude" that there has been an understatement, because its motion is premised upon the fact that it has so concluded based upon additional evidence. Further, it asserts that any stage of the present litigation constitutes "the judicial allocation proceeding," because there has clearly been no trial or evidentiary hearing yet held on the issue of volumetric contri-

butions to the site. Consequently, Consol's interpretation of this disputed language, stated more precisely, is that if Consol determines (presumably in good faith) that there is substantial evidence supporting the proposition that Beazer understated its volumetric contributions by the required amount, and if that conclusion is reached at any time while this case is ongoing, its "reopener" rights are triggered.

Beazer, on the other hand, argues for a narrow interpretation of both phrases. Beazer contends that the only entity which can reach a conclusion about volumetric contributions which is significant to the right to reopen is the Court. Since the Court has reached no such conclusion, the agreement stands as written. Further, Beazer asserts that the only way the Court can come to a conclusion about volumetric contributions is at the allocation trial. Consequently, as Beazer interprets this language, it means that if there is an allocation trial, and if the Court, after hearing all of the evidence concerning allocation, concludes that Beazer understated its volumetric contribution to the site by the specified amount, Consol would then be entitled to reopen the settlement agreement. Of course, since neither of these things has yet occurred, Beazer asserts that Consol's motion is premature.

Each of these interpretations has some logical support. For example, Consol argues that if the reopener provision were not triggered until after the judicial allocation trial, if it ultimately settles with the remaining parties and no such trial is held, it would have no recourse against Beazer even if it could be easily proven that Beazer understated its volumetric contribution to the site. According to Consol, such an interpretation renders the right to reopen largely illusory. On the other hand, Beazer argues, with some persuasive force, that the language could not have been intended to permit Consol to determine unilaterally that, based upon the discovery of additional evidence, it had now concluded for itself

that Beazer had understated its volumetric contribution. This interpretation would tend to render the term "judicial" in the phrase "judicial allocation proceeding" largely meaningless. It would, of course, be somewhat odd for Consol's right to reopen to depend upon the results of a trial at which Beazer would not be a participant, but the parties could have intended that Consol give Beazer notice that it would intend to contest Beazer's volumetric allocation at trial, and would be asking the Court to make findings on that issue as a prelude to triggering the reopener provision, with the understanding that Beazer, if it so chose, could then intervene in the proceeding and attempt to defend itself against an effort to allocate additional waste to it.

Obviously, it would have been helpful had the parties chosen more precise language. Since they did not, the Court believes that the ambiguity justifies expanding the proceedings to take additional evidence on what the parties' intent was with respect to triggering the reopener clause.

The Court has also considered the extent to which it should address the remaining arguments of the parties, all of which relate to what relief is available if the settlement is reopened. The Court concludes that until it is determined whether the reopener clause has been triggered, which can only be decided after the submission of additional evidence, it should not make a definitive decision on that issue. However, the Court does note that it appears that the agreement may well be ambiguous concerning the relief to which Consol is entitled if the reopener clause has been triggered. The Court does not immediately perceive what it means to "reopen" a settlement agreement. Conceivably, that could mean that the entire settlement agreement is void; or it could mean, as Consol asserts, that the amount of waste attributable to Beazer is simply modified by whatever additional amount is allocated to Beazer in "the judicial alloca-

tion proceeding"; or it could mean, as Beazer contends, that the Court is entitled to adjust the volume but then to make an equitable determination of how to increase Beazer's share without reference to the formula contained in the settlement agreement. Again, none of these alternatives is precisely spelled out, and the Court believes that before answering any of these questions, it would be required to take parol evidence if the parties wished to offer it. It may be more economical to take all the parol evidence each party wishes to offer in a single proceeding, and then to decide all of the issues. That matter, however, can be addressed at a status conference, which is the method the Court chooses in order to determine how to proceed with respect to the first issue of contractual interpretation identified in this order.

## IV.

For the foregoing reasons, the Court concludes that the parties should be afforded the opportunity to present additional evidence on the contract interpretation issue raised by Consol's motion to enforce. The Court further concludes that it has jurisdiction to determine the merits of that motion. Consequently, the Clerk is directed to contact the remaining parties to this case for purposes of arranging a telephone status conference at which the issue of further proceedings on the motion will be discussed.