[Cite as *Jacobson v. Gross*, 2022-Ohio-3427.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

WENDY JACOBSON, ET AL., :

    Plaintiffs-Appellees, :

                             No. 110987

    v. :

DOLORES H. GROSS, ET AL., :

    Defendants-Appellants. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 29, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2015 ADV 207281

---

### *Appearances:*

Mansour Gavin, LPA, Charles T. Brown, and Michael P. Quinlan, *for appellees.*

Jonathan Gross, *pro se.*

EMANUELLA D. GROVES, J.:

**{¶ 1}** Third-party defendant-appellant, Jonathan Gross ("Jonathan"), appeals the probate court's decision to enforce a 2015 settlement agreement. For the reasons set forth below, we affirm.

## Procedural and Factual History

{¶ 2}   The instant appeal has a protracted procedural history flowing from a prolonged interfamily feud, resulting in years of litigation, on several different fronts, aspects of which are still ongoing.  We will limit our factual and procedural review to matters pertinent to this appeal.

{¶ 3} In 1999, Marvin J. Gross ("Marvin"), as settlor and trustee, executed an instrument of trust creating the Marvin J. Gross Declaration of Trust.  Marvin died in April 2007, and the instrument created a Family Trust ("Trust") and his wife, Dolores Gross ("Dolores"), became the successor trustee.   Marvin and Dolores had five children namely: Wendy Jacobson ("Wendy"), Deborah Gross ("Deborah"), Linda Gross ("Linda"), David Gross ("David"), and Jonathan Gross.

{¶ 4} The Trust's major asset was Gross Management Inc. ("GMI"), an Ohio corporation that owned Beachcliff Place Apartments (the "Apartments").   An additional asset of the Trust was a promissory note from David in the amount of $1,000,000, evidencing a loan relative to David's ownership of Sahbra Farms, Inc., a horse farm ("Sahbra").[1]

{¶ 5} Distributions of income and/or principal from the Trust was for the primary benefit of Dolores and Marvin's lineal descendants as Dolores, serving as the trustee, determined in accordance with certain discretionary standard.  Under the Trust, upon Dolores' death, Wendy, Deborah, Linda, and David would receive

---

[1] The Trust did not own any shares of Sahbra.

an equal share of the Trust's assets. Under the Trust, Jonathan and his descendants were intentionally excluded as beneficiaries.

{¶ 6} On May 20, 2015, Wendy, Deborah, and Linda (hereinafter collectively "the Appellees") filed a complaint in the Cuyahoga County Probate Court against Dolores individually, and as trustee of the Trust, as well as against David.[2] The complaint stemmed from the discovery, following an independent forensic examination of the management of GMI, that David had allegedly embezzled approximately $500,000 from GMI. The report indicated that David, whom Dolores had hired in 2007 to be GMI's property manager, had been using GMI's assets to pay Sahbra's expenses. Shortly after the revelation, Dolores dismissed David as the property manager.

{¶ 7} The complaint alleged that Dolores had breached her fiduciary duty, by negligently enabling the embezzlement, and that she was physically, emotionally, and mentally unable to carry out her duties as the trustee. The complaint sought an accounting for the Trust from April 2007, through the date of the filing of the complaint, and compensatory damages from David[3] because of his embezzlement. The complaint also requested that Dolores be removed from the role of trustee and be replaced by Wendy.

---

[2] David is not a party to this appeal.

[3] David would later name Jonathan as a party to the case via a third-party complaint.

{¶ 8} In July 2015, Dolores discovered that the Trust only owned 80 percent of the Apartments, under GMI, while she owned the remaining 20 percent in her individual capacity. Dolores announced her intentions to bequeath that 20 percent to Jonathan, the only offspring disinherited under the Trust.

{¶ 9} In October 2015, the Appellees entered into a settlement agreement ("Settlement Agreement") with Dolores and Jonathan. Under the Settlement Agreement, in exchange for Dolores' individual 20 percent interest in the Apartments, the Appellees agreed that Dolores would remain trustee of the Trust. The Appellees also agreed that a transfer on death instrument of Dolores' home to Jonathan to go unchallenged, that her most recent will to go unchallenged after her death, and agreed to release their claims against Dolores and Jonathan.

{¶ 10} In accordance with the terms of the Settlement Agreement, Dolores executed a stock power and transfer on death beneficiaries for membership interests conveying her 20 percent individual interest in the Apartments to the Appellees upon her death. Under the Settlement Agreement, Dolores expressly agreed that the retitling of her shares in the Apartments was "irrevocable." Also, Jonathan agreed that he would refuse to accept any interest in the Apartments from Dolores after the date of the Settlement Agreement.

{¶ 11} On October 21, 2015, the Appellees dismissed all claims against Dolores, individually, and explicitly stated that the claims against the other defendants remained pending. The following month, Dolores executed a supplement to the Settlement Agreement ("Supplement Agreement"), wherein she

promised not to sell nor attempt to market the Apartments without consent from the Appellees.

{¶ 12} In January 2016, Appellees filed a notice of breach of the Settlement Agreement. Therein, the Appellees alleged that Dolores breached the Settlement Agreement by refusing to cooperate with Bellwether Enterprises' requests for an accurate reporting of all income and expenses associated with the Apartments and the laundry facility, in accordance with paragraph six of the Settlement Agreement. The Appellees further alleged that Dolores' termination of the Apartments' manager, Branislav Ugrinov ("Branislav"), was a breach of the Settlement Agreement. Pursuant to the terms of the Settlement Agreement, the Appellees gave Dolores 14 days to respond to the notice and warned that if she failed to respond or if there was no resolution, the parties would proceed to mediation.

{¶ 13} The following month, pursuant to the Settlement Agreement's mediation clause, the Appellees filed a motion for an order of mediation, which the probate court granted on February 11, 2016. On February 15, 2016, the Appellees' counsel sent a letter to Dolores attempting to begin mediation proceedings. However, these attempts to schedule mediation were halted because Dolores' attorney, citing conflicts of interest, rejected the three mediators chosen by the court. Eventually, the Appellees' counsel asked Dolores' attorney to choose the mediator. Ultimately, Dolores did not choose a mediator.

{¶ 14} In the interim and unbeknownst to the Appellees,[4] at the end of February 2016, Dolores allegedly gave Jonathan power of attorney. On March 11, 2016, Dolores also executed a "Stock Power" and a "Designation of Transfer on Death Beneficiary for Membership Interests," which would serve to transfer the 20 percent individual interest in the Apartments to Jonathan upon her death. In addition, on April 16, 2016, Dolores executed "Gift Documents" that transferred the same 20 percent to Jonathan as an inter vivos gift.

{¶ 15} On April 25, 2016, Dolores passed away and her death ended the mediation discussions. Pursuant to the Settlement Agreement, the Appellees were slated to become the owners of Dolores' 20 percent interest in the Apartments and Jonathan would become the owner of Dolores' condominium, which he later sold for $375,000.

{¶ 16} On October 3, 2017, Jonathan filed a complaint in the Cuyahoga County Court of Common Pleas, General Division, seeking a declaratory judgment that the Settlement Agreement was fraudulently induced.[5] Jonathan also sought

---

[4] The Appellees did not become aware of these actions until October 2017.

[5] The action in the General Division was stayed pending a decision by the Probate Court regarding jurisdiction over the Settlement Agreement. On April 25, 2018, the Probate Court issued a judgment entry finding that, pursuant to R.C. 2101.24(B)(1)(b), it had concurrent jurisdiction with the General Division to hear and determine any action that involved an inter vivos trust. Further, that pursuant to R.C. 2101.24(C) it had plenary power at law and in equity to dispose fully of any matter that was properly before the court unless the power was expressly otherwise limited or denied by a section of the Revised Code.

a declaration that the transfer on death and inter vivos documents transferring Dolores' 20 percent individual interest in the Apartments to him were valid.

{¶ 17} On October 19, 2017, after discovering that Dolores had allegedly executed the above documents in favor of Jonathan, the Appellees filed an Emergency Motion to Enforce the Settlement Agreement in the Probate Court. Therein, the Appellees indicated that on October 6, 2017, "[Jonathan] filed an Affidavit of Facts Related to Title with Cuyahoga County Recorder's Office, claiming he is a 20 percent owner of certain property owned by [the Trust], Wendy, Linda, and Deborah." The Appellees indicated that Jonathan's filing of the affidavit had created a cloud on the title to the Apartments and had caused damage to the Trust and to the Appellees.

{¶ 18} In addition, the Appellees noted that all of Jonathan's claims, in his filing in the General Division, which related to his alleged ownership of the 20 percent interest in GMI was the subject of the Settlement Agreement. The Appellees further noted that all the parties to Jonathan's action in the General Division were the same parties in the matter pending in the Probate Court.

{¶ 19} On October 26, 2017, Jonathan filed a motion in opposition, arguing that the Probate Court did not have jurisdiction. Jonathan also argued that the Appellees needed to first adhere to the mediation clause of the Settlement Agreement before seeking court intervention. In addition, Jonathan argued that the Appellees' motion was an improper attempt to deny him the right to pursue his claim in his chosen forum. Further, Jonathan argued that his fraud claim could

not be resolved in a perfunctory hearing and that the motion was an attempted end-run around the rule of law and his right to properly litigate these issues.

{¶ 20} On January 9, 2018, the probate court directed the parties to brief the jurisdictional issue. On January 23, 2018, the Appellees filed their memorandum in support of the probate court's jurisdiction to enforce the Settlement Agreement. Days later, Jonathan filed his brief in opposition. On April 25, 2018, the probate court journalized an entry stating that pursuant to R.C. 2101.24(B) and (C), it had jurisdiction, to enforce the Settlement Agreement. The probate court then scheduled a hearing on the motion to enforce the Settlement Agreement.

{¶ 21} On October 16, 2018, Jonathan filed a motion in limine requesting an order to exclude evidence related to fraud at the hearing on the alleged breach of the Settlement Agreement. Jonathan also filed a combined motion for (1) a status conference, (2) clarification, (3) mediation, and (4) cancellation of the November 8, 2018 hearing. On October 22, 2018, the probate court denied the combined motion and Jonathan's request to exclude any evidence of fraud at the hearing on the motion to enforce the Settlement Agreement.

{¶ 22} On November 8, 2018, the probate court held a hearing on the motion to enforce the Settlement Agreement. Following the hearing, the probate court found that

[a] Settlement Agreement was reached in this case on October 16, 2015, and as a result of the agreement, the claims against Defendant Dolores H. Gross were dismissed.

As a further result of the Settlement Agreement, the Plaintiffs allowed a revised will signed by Defendant Dolores Gross as well as a transfer of real property to Jonathan Gross to stand without challenge.

\* \* \*

[T]hat [when] Jonathan Gross, Dolores Gross, and the Plaintiffs executed the Settlement Agreement, Dolores Gross irrevocably agreed to transfer to the Plaintiffs, through a transfer-on-death designation, her 20% interest in Gross Management Company Limited and Gross Management, Inc.

Jonathan Gross agreed "by signing this agreement that he refuses to accept from Dolores at any time subsequent to the signing of this Agreement any interest in Gross Management, Inc. and/or Gross Management Company LLC and will refuse to accept any future transfer of any interest in said entities to him from Dolores."

[T]hat in exchange for the agreement to transfer the 20% shares to the Plaintiffs, they in turn, among other concessions, forfeited their right to challenge the transfer of Dolores' real property to Jonathan.

[T]hat while Jonathan was not a party to the case at the time this agreement was signed, he was subsequently named as a defendant in a cross claim filed by another Defendant in this action. [T]hat Jonathan's signature on the Settlement Agreement was important due to his involvement with and influence on Dolores through this case up until the time of her death.

[T]hat on March 11, 2016, Dolores allegedly executed both a "Stock Power" and a "Designation of Transfer on Death Beneficiary for Membership Interests" transferring her 20% interest in Gross Management to Jonathan in violation of the Agreement signed by Dolores and Jonathan. Additionally, on April 16, 2016, Dolores allegedly signed documents gifting her 20% ownership to Jonathan. Jonathan does not deny that he was aware of these documents and in fact asserted that he is the rightful owner of the 20% interest despite the fact that Dolores had irrevocably transferred her interest to the Plaintiffs in the October 16, 2015, Settlement Agreement.

\* \* \*

[T]hat it is undisputed that Jonathan Gross signed the Settlement Agreement dated October 16, 2015. [F]urther, that it is undisputed that Jonathan Gross violated the terms of the Settlement Agreement by accepting and asserting an interest in the alleged transfer of Dolores Gross's 20% interest in Gross Management Co. LLC and Gross Management Inc.

\* \* \*

Specifically, that the October 16, 2015 Settlement Agreement \*\*\* is a valid and enforceable Agreement which was reached in partial settlement of the issues in this case. That the March 11, 2016 "Stock Power" and Designation of Transfer on Death Beneficiary for Membership Interests" for the benefit of Defendant Jonathan Gross are null and void and that the April 16, 2016 "Gift Documents" benefitting Jonathan Gross are null and void. That the "Affidavit of Facts Related to Title" filed with the Cuyahoga County Fiscal Office on October 6, 2017, is null and void.

{¶ 23} On November 27, 2018, the probate court granted the Appellees' motion to enforce the Settlement Agreement. The probate court also awarded the Appellees attorney fees and costs in the amount of $12,523.

{¶ 24} On December 26, 2018, Jonathan filed a notice of appeal, which we dismissed for lack of a final appealable order. Subsequently, on November 5, 2021, Jonathan refiled his notice of appeal. Jonathan assigns the following four errors for review:

### Assignment of Error No. 1

The Probate Court erred as a matter of law when it determined that it had jurisdiction to hear the Emergency Motion to Enforce Settlement Agreement.

## Assignment of Error No. 2

The Probate Court violated Appellant's Due Process Rights by Not Providing Appellant with Sufficient Notice of the Hearing on the Emergency Motion to Enforce Settlement Agreement.

## Assignment of Error No. 3

The Probate Court erred by not ordering the parties to mediation, as required under the terms of the Settlement Agreement.

## Assignment of Error No. 4

The Probate Court abused its discretion in awarding Appellees Attorney's Fees and Costs as there was no Finding of Bad Faith.

## Law and Analysis

{¶ 25} In the first assignment of error, Jonathan argues that the probate court erred when it determined that it had jurisdiction to hear the emergency motion to enforce the settlement agreement.

### Standard of Review

{¶ 26} The standard of review for a motion to enforce a settlement agreement turns on the question presented. "'If the question is an evidentiary one, this court will not overturn the trial court's finding if there was sufficient evidence to support such finding.'" *Kingsbury v. Cornerstone Family Office L.L.C.,* 8th Dist. Cuyahoga No. 109886, 2022-Ohio-18, ¶ 18, citing *Turoczy Bonding Co. v. Mitchell*, 2018-Ohio-3173, 118 N.E.3d 439, ¶ 15 (8th Dist.), quoting *Chirchiglia v. Adm., Bur. of Workers' Comp.,* 138 Ohio App.3d 676, 679, 742 N.E.2d 180 (7th Dist.2000).

**{¶ 27}** Where the issue is a question law, we must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. *Id.*, citing *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). Jonathan presents a jurisdictional issue, which is a question of law.

**Scope of Jurisdiction**

**{¶ 28}** Within the first assignment of error, Jonathan posits that the probate court's power does not extend to jurisdiction over the Settlement Agreement.

**{¶ 29}** Preliminarily, probate courts are courts of limited jurisdiction and probate proceedings are limited to such actions as are permitted by statute and the Ohio Constitution. *Galloway v. Galloway*, 2017-Ohio-87, 80 N.E.3d 1225, ¶ 6 (8th Dist.), citing *Corron v. Corron*, 40 Ohio St.3d 75, 531 N.E.2d 708 (1988), paragraph one of the syllabus. R.C. 2101.24(A)(1), which governs the probate court's jurisdiction, states in pertinent part that the probate court has exclusive jurisdiction:

> (e) To appoint and remove guardians, conservators, and testamentary trustees, direct and control their conduct, and settle their accounts;
>
> * * *
>
> (m) To direct and control the conduct of fiduciaries and settle their accounts;
>
> * * *

{¶ 30} Despite its limited jurisdiction, the probate courts also have plenary power "at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code." R.C. 2101.24(C). *See Campbell v. Donald A. Campbell 2001 Trust*, 8th Dist. Cuyahoga No. 109585, 2021-Ohio-1731, ¶ 18, citing *Ivancic v. Enos*, 2012-Ohio-3639, 978 N.E.2d 297, ¶ 35 (11th Dist.).

{¶ 31} In this matter, the Appellees filed this case in the probate court. As stated previously when the Appellees filed their complaint, they specifically alleged that Dolores had breached her fiduciary duty, regarding an inter vivos trust, by negligently enabling David's embezzlement. The complaint also alleged that Dolores was physically, emotionally, and mentally unable to carry out her duties as the trustee. The Appellees sought Dolores' removal and the appointment of Wendy as the successor trustee.

{¶ 32} Here, because the Appellees brought a complaint for breach of fiduciary duty and sought removal of the trustee of a trust, it was a matter that was properly before the probate court. Claims for breach of fiduciary duty that, as here, inexorably implicate control over the conduct of fiduciaries, are within the subject-matter jurisdiction by virtue of R.C. 2101.24(A)(1)(c). *State ex rel Lewis v. Moser*, 72 Ohio St.3d 25, 29, 647 N.E.2d 155 (1995).

{¶ 33} Importantly, the Settlement Agreement at issue flowed directly from the complaint and, as the probate court aptly noted, "was entered into to settle and resolve the breach, accounting and removal actions concerning the Trust."

Therefore, because the complaint was properly before the court and the Settlement Agreement flowed from the complaint, the probate court had plenary power to enforce the Settlement Agreement. As such, Jonathan's contention is not well taken.

**Probate Court Never Lost Jurisdiction**

{¶ 34} Jonathan next posits that the probate court lost jurisdiction once the Settlement Agreement was executed and Dolores was dismissed from the case. This assertion lacks merit. To be discussed below, the dismissal of Dolores, in her individual capacity, did not dismiss all claims, or end the litigation.

{¶ 35} Relevant here, Civ.R. 54(B) states in pertinent part that

> any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

{¶ 36} As previously noted, the Appellees filed their complaint against Dolores individually, and also in her capacity as Trustee. Further, Dolores was dismissed in her individual capacity and, in fact, the judgment entry dismissing Dolores specifically stated that it was a "partial dismissal." Thus, the claims against Dolores in her capacity as the Trustee and the claims against the other defendants remained pending.

{¶ 37} *Consolidation Coal Co. v. United States DOI*, 43 F.Supp.2d 857 (S.D.Ohio 1999), fittingly cited by the Appellees, held that under Fed.R.Civ.P.

54(b), "a settlement agreement which dismisses fewer than all claims or fewer than all parties to a lawsuit 'is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.'" *Id.* at 863. In so concluding, the court explained that a dismissal of "all claims against a particular party, so long as claims against other parties remain for adjudication," is interlocutory and subject to revision until the adjudication of the remaining claims or parties. *Id.* The court continued "where an order of dismissal is merely interlocutory, no reservation of jurisdiction over the parties' dispute is needed because jurisdiction has never been lost." *Id.*

**{¶ 38}** Here, because Dolores was dismissed from the case in her individual capacity, but the Appellees claims against Dolores, as Trustee, as well as their claims against the other defendants remained pending, Dolores' dismissal was an interlocutory order. Because the dismissal was an interlocutory order, the probate court was not required to retain jurisdiction to enforce the Settlement Agreement, since it never lost jurisdiction. This is true even when the dismissal entry does not expressly reserve jurisdiction to the court. *Continental*, 74 Ohio St.3d 501, 660 N.E.2d 431 at *id.*

**{¶ 39}** Nonetheless, Jonathan cites several cases to support his belief that the probate court lost jurisdiction once Dolores was dismissed from the case. However, all the cases Jonathan relies on involve situations where the court dismissed all claims against all parties, and thus are distinguishable from the present situation. As previously discussed, this matter involved the dismissal of

one party in her individual capacity, leaving the remaining parties and claims intact.

### No Allegation of Fraud

**{¶ 40}** Jonathan next posits that the probate court had no jurisdiction over claims alleging fraud. Immediately, we point out the Appellees never brought any claims of fraud. Further, although he could have, Jonathan never raised fraud as a defense to the enforcement of the Settlement Agreement in the probate court. Instead, as previously noted, Jonathan filed a separate action, in a different venue, alleging that the Settlement Agreement was fraudulently induced. As such, this assertion is not well taken.

### Jurisdictional Priority Rule

**{¶ 41}** Jonathan next posits that the jurisdictional priority rule vests the General Division with jurisdiction over the Settlement Agreement.

**{¶ 42}** The principles of the jurisdictional-priority rule are well established. This rule provides that "'[a]s between [state] courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all tribunals, to adjudicate upon the whole issue and to settle the rights of the parties.'" *State ex rel. Tri Eagle Fuels L.L.C. v. Dawson*, 2018-Ohio-3054, 118 N.E.3d 304, ¶ 6 (8th Dist.), citing *State ex rel. Dannaher v. Crawford*, 78 Ohio St.3d 391, 393, 678 N.E.2d 549 (1997), quoting *State ex rel. Racing Guild of Ohio v. Morgan*, 17 Ohio St.3d 54, 56, 476 N.E.2d

1060 (1985), and *State ex rel. Phillips v. Polcar,* 50 Ohio St.2d 279, 364 N.E.2d 33 (1977), syllabus.

{¶ 43} Hence, "where a suit is commenced in one jurisdiction which involves the 'whole issue' between the parties, a second court may not interfere with the resolution of the issue filed in the first court." *Davis v. Cowan Sys.*, 8th Dist. Cuyahoga No. 83155, 2004-Ohio-515, ¶ 13; citing *CWP Ltd. Partnership v. Vitrano*, 8th Dist. Cuyahoga No. 71314, 1997 Ohio App. LEXIS 2116, 5-6 (May 15, 1997).

{¶ 44} Further, "'[t]he determination of whether two cases concern the same "whole issue" is a two-step analysis. First, there must be cases pending in two different courts of concurrent jurisdiction involving substantially the same parties; and second, the ruling of the court subsequently acquiring jurisdiction may affect or interfere with the resolution of the issues before the court where suit was originally commenced.'" *Id.* at ¶ 14, quoting *Vitrano* at 6. If the test is satisfied, the jurisdictional-priority rule applies and the court in which the last action was filed should dismiss the case for lack of subject-matter jurisdiction.

{¶ 45} In this matter, Jonathan argues that the General Division had priority over the probate court because he filed his action there before the Appellees filed their motion to enforce the Settlement Agreement in the probate court. Jonathan is mistaken in this belief.

{¶ 46} As previously stated, the Appellees filed their complaint on May 20, 2015, in the probate court, more than two years before Jonathan filed his

complaint in the general division. The triggering event was the 2015 probate court filing. Further, as discussed above, although Dolores was dismissed from the case in her individual capacity, the case was far from concluded, but continued against Dolores, as the Trustee, and against the other defendants. Simply put, the probate court's jurisdiction was first invoked. As a result, under the jurisdiction-priority rule, the probate court had subject-matter jurisdiction over the dispute.

{¶ 47} Accordingly, we overrule the first assignment of error.

**No Due Process Violation**

{¶ 48} In the second assignment of error, Jonathan argues the probate court violated his due process rights by not providing sufficient notice of the hearing on the Appellees' emergency motion to enforce the Settlement Agreement.

{¶ 49} Preliminarily, the Due Process Clause of the Fifth Amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment, provides: "No person shall * * * be deprived of life, liberty, or property, without due process of law." Due process requires notice and an opportunity to be heard. *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Importantly, "'[d]ue process requires that persons whose property interests are jeopardized by the filing of legal proceedings be given notice reasonably calculated, under all the circumstances, to apprise those persons of the pendency of the action and afford them an opportunity to present their objections.'" *Huntington Natl. Bank v. Motel 4 BAPS, Inc.*, 2010-Ohio-5792, 944 N.E.2d 1210, ¶ 18 (8th Dist.), quoting *Galt Alloys, Inc. v. Key Bank Natl. Assoc.*,

85 Ohio St.3d 353, 708 N.E.2d 701 (1999), paragraph one of the syllabus. The notice must convey the required information and afford time for those interested in making an appearance to protect rights. *Palazzi v. Estate of Gardner*, 32 Ohio St.3d 169, 172, 512 N.E.2d 971 (1987). We employ a de novo standard of review in matters alleging a violation of due process. *In re A.R.,* 8th Dist. Cuyahoga Nos. 104869, 104870, 104871, 104872, 104873, 104875, and 104876, 2017-Ohio-8058, ¶ 15, citing *In re D.C.,* 2017-Ohio-114, 75 N.E. 3d 1040, ¶ 14 (10th Dist.).

**{¶ 50}** In this matter, despite Jonathan's contentions, the record reveals that he had notice of both the hearing on the Appellees' emergency motion to enforce the Settlement Agreement and of the subject-matter of the hearing. To begin, upon Appellees filing the emergency motion to enforce the Settlement Agreement, Jonathan opposed the motion and subsequently filed motions that, when viewed, refute his present claims.

**{¶ 51}** Specifically, after the probate court issued its September 6, 2018 notice of hearing, Jonathan filed two motions on October 16, 2018. The first, requested an order scheduling a status conference, requested clarification of the notice of hearing, requested that the dispute be referred to mediation, and requested cancellation of the scheduled hearing. Second, Jonathan filed a motion in limine to exclude evidence of fraud at the hearing.

**{¶ 52}** On October 22, 2018, the probate court journalized an entry stating in relevant part that

the Court finds that the issues raised in Jonathan Gross's Motion have been addressed by the Court with the long line of attorneys representing Jonathan and in its prior orders.

The Court finds and Orders that a status conference is not necessary and therefore denies the Motion for Immediate Status Conference.

The Court finds and Orders that the hearing scheduled for November 8, 2018, is a Hearing on Plaintiffs' Motion to Enforce Settlement Agreement and further Orders that the Hearing shall be heard as scheduled.

**{¶ 53}** Here, in addition to the notice of hearing issued September 6, 2018, the above journal entry expressly gave Jonathan notice that was reasonably calculated, under all the circumstances, to apprise him of the pendency of the action and afforded him an opportunity to present any objections. The above excerpt clearly indicated that Jonathan was apprised of the subject matter of the hearing. Because Jonathan had notice of the hearing, as well as notice of the hearing's purpose, plus was present at the hearing, and participated fully, there was no due process violation.

**{¶ 54}** Nonetheless, Jonathan argues that after seeking clarification, of the purpose of the hearing, he proceeded with the belief that the issue of fraud would not be addressed at the hearing. The probate court's journal entry spoke in relevant part to Jonathan's notion as follows:

The Court finds that the counsel for Jonathan Gross, who filed their appearance in this case on October 16, 2018, filed a Motion in Limine asking this Court to exclude evidence related to fraud. In support of his Motion in Limine Defendant Jonathan Gross submitted the affidavits of two attorneys who had previously represented Gross. The Affidavit of Matthew C. Miller alleges that Miller attended a pretrial conference before this court on January 9, 2018, and that it is

his "recollection" that the Court told counsel that it would not "entertain the fraud in the inducement issue" that Jonathan has alleged in his Complaint filed in the General Division.

The second Affidavit, signed by Attorney Stewart D. Roll, alleges that Roll spoke to the Judge's Assistant to seek clarification of how the Court would proceed and what would be considered at the scheduled hearing. Roll further asserts that he was told by the Judge's Assistant that "the Judge had not changed her mind about her January 9, 2018, status conference determination and advice that the fraud in the inducement issue...would not be considered."

Defendant Jonathan Gross argued that in reliance on the supposed comments made off the record at a pre-trial hearing in January of this year, he had not conducted discovery on his allegation of fraud and therefore moved that the determination of fraud be left to the General Division. Counsel for Defendant Jonathan Gross further asserted that he would be willing to concede that his client had not complied with the Settlement Agreement if this Court would make a determination that the General Division had jurisdiction to hear the fraud in the inducement claim.

* * *

The Court finds that Defendant Jonathan Gross insists that he should be permitted to pursue his claim of fraud in the inducement claim in the General Division Case. This Court further finds that it is not for this Court to decide what claims may proceed in another division of the Court. This Court has asserted its jurisdiction to enforce the Settlement Agreement. The Motion to Enforce was scheduled for hearing, Jonathan Gross was notified of the hearing and the hearing went forward as scheduled. If Jonathan Gross had a defense to the Motion it was incumbent on him to present it at the scheduled hearing.

The Court finds that the posture taken by Defendant Jonathan Gross—that the Court would proceed with a hearing on the Motion to Enforce without giving Gross an opportunity to present his defense (fraud in the inducement) is an insult to the integrity of this Court. The Court further finds that the submission of affidavits by two of Gross's former attorneys, one asserting what he recalled the undersigned saying at an off the record pretrial conference and the other relying on relayed messages through the Court's Judicial Assistant is equally an unacceptable portrayal of accepted practices of the Court.

**{¶ 55}** At the hearing on the motion to enforce the Settlement Agreement, the following exchange took place between the probate court and Jonathan's new counsel:

> [ATTORNEY]: I just want to say, your Honor, I am not suggesting that any of this is accurate other than the fact that his impression is relevant to this.
>
> [JUDGE]: You are questioning the Court's integrity, and I have read through my notes from the January hearing. I have a phone message, because I can tell you exactly what my message was from Attorney [X]. I have it. * * * The question posed to me was, "Does the Judge stand by her * * * entry?" And I said, * * * "Yeah, I stand by my entry."
>
> Then, Mr. [X] talked to [Court Staff], and all he wanted to know was, what was the purpose of the hearing? And he was told the hearing was on a Motion to Enforce Settlement. So I really — I'm sorry, I'm trying not to be real sensitive here, but I'm not hearing the fraud case from across the street.
>
> I am hearing the Motion to Enforce Settlement. I don't know how else to make that clear. * * * And if I said to all of these attorneys, all I'm hearing is Motion to Enforce Settlement * * * [,] [t]hat doesn't mean everything relevant to this motion shouldn't be heard today. I don't know what people are going to bring as evidence.

**{¶ 56}** Here, as reflected above and elsewhere in the record, the probate court was clear that the hearing was on the motion to enforce the Settlement Agreement. Critically, Jonathan was not precluded from raising any issue he thought relevant. In the end, Jonathan elected not to present fraud in the inducement as a defense. Again, because we find Jonathan was notified of the hearing and its subject matter and was given a full opportunity to present evidence on any issue he deemed important, including fraud in the inducement, we find that Jonathan's due process rights were not violated.

**{¶ 57}** Accordingly, we overrule the second assignment of error.

**Lack of Mediation — No Abuse of Discretion**

**{¶ 58}** In the third assignment of error, Jonathan argues that the trial court abused its discretion by not ordering mediation.

**{¶ 59}** At the outset, we note, "a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation." *Estate of Millstein*, 8th Dist. Cuyahoga No. 110546, 2021-Ohio-4610, ¶ 50, citing *Continental W. Condominium Unit Owners Assn.*, 74 Ohio St.3d at 501, 502, 660 N.E.2d 431. Further, interpretation of a written contract is a question of law reviewed de novo. *Id.*, citing *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, ¶ 28.

**{¶ 60}** In this matter, paragraph 16 of the Settlement Agreement provided that in the event of an alleged breach, the parties agree to the following procedure:

 a. The non-breaching party will notify the perceived breaching party of the alleged breach with fourteen (14) days of discovering such breach. Such notification shall be in writing;

 b. The perceived breaching party will then have fourteen (14) days to respond to the non-breaching party. Such response shall be in writing, and;

 c. In the event the alleged breach cannot be mutually resolved, the parties agree to mediate the issues surrounding the alleged breach, and will not seek Court intervention until mediation has failed.

**{¶ 61}** Jonathan contends that the Appellees made no attempt to mediate as required by Subsection "c," of the Settlement Agreement, before they sought court intervention. However, despite this assertion, Jonathan acknowledged in his

brief to this court that it was he who sought court intervention without first attempting to mediate. Despite this acknowledgment, Jonathan claims that he did not breach the mediation clause because the Settlement Agreement was fraudulently induced. We find Jonathan's argument perplexing and somewhat disingenuous.

{¶ 62} Under the unambiguous meaning of Subsection "c," Jonathan was required to mediate any dispute, including his claim of fraud in the inducement, before seeking court intervention. Illustratively, and as previously noted, when there were indications that Dolores had breached the Settlement Agreement, the Appellees followed the steps outlined in Paragraph 16 of Settlement Agreement and attempted to mediate, before Dolores succumbed to her illness. Unlike the Appellees, it is undisputed that Jonathan made no attempt to mediate before filing his complaint in the general division. In doing so, Jonathan invited the error of which he now complains.

{¶ 63} Under the invited-error doctrine, ""'a party is not entitled to take advantage of an error that he himself invited or induced'"" *Klik v. Moyer*, 8th Dist. Cuyahoga No. 100576, 2014-Ohio-3236, ¶ 13, quoting *Manning v. Jusak*, 8th Dist. Cuyahoga No. 99459, 2013-Ohio-4194, ¶ 9, quoting *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517; *State v. Smith*, 148 Ohio App.3d 274, 2002-Ohio-3114, 772 N.E.2d 1225, ¶ 30 (8th Dist.). Here, having invited or induced the error, by failing to first seek mediation, Jonathan is not entitled to complain that the probate court did not order mediation.

**{¶ 64}** Accordingly, we overrule the third assignment of error.

**Awarding Attorney Fees Proper — Exception to the American Rule**

**{¶ 65}** In the fourth assignment of error, Jonathan argues the probate court abused its discretion in awarding attorney fees.

**{¶ 66}** We review a probate court's judgment awarding attorney fees for an abuse of discretion. *In re Estate of Brate*, 12th Dist. Warren No. CA2007-08-103, 2008-Ohio-3517, ¶ 6, citing *Demo v. Demo*, 101 Ohio App.3d 383, 388-89, 655 N.E.2d 791 (12th Dist.1995). An abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 67}** Within this assignment of error, Jonathan argues there was no justification for the award of attorney fees and costs. Specifically, Jonathan asserts that the American Rule applied, but the probate court did not make any findings of bad faith.

**{¶ 68}** It is true that Ohio adheres to the rule that "a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7, citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 33-34, 514 N.E.2d 702 (1987), and *State ex rel. Beebe v. Cowley*, 116 Ohio St. 377, 722, 156 N.E. 214 (1927). There are, however, exceptions to this rule. Attorney fees may be awarded if (1) a statute creates a duty to pay fees, (2) the losing party has acted

in bad faith, or (3) the parties contract to shift fees. Attorney fees may be awarded when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees, or when the prevailing party demonstrates bad faith on the part of the unsuccessful litigant. *Id.*

{¶ 69} In *Rayco Mfg. v. Murphy, Rogers, Sloss & Gambel*, 2019-Ohio-3756, 142 N.E.3d 1267 (8th Dist.), this court, sitting en banc, endorsed another exception when it determined that "attorney fees can be awarded as compensatory damages to the prevailing party on a motion to enforce a settlement agreement when the fees are incurred as a direct result of a breach of the settlement agreement." *Id.* at ¶ 20.

{¶ 70} In this matter, the probate court found that Jonathan violated the terms of the Settlement Agreement and that the Appellees incurred fees in their efforts to enforce the Settlement Agreement. The probate court awarded attorney fees in the amount of $12,532.

{¶ 71} Here, because the trial court found that Jonathan breached the Settlement Agreement and the Appellees incurred attorney fees as a result of that breach, the award fits squarely into the fourth exception to the American Rule pronounced in *Rayco*. As such, the probate court did not have to make a finding of bad faith as Jonathan suggests. Based on this court's en banc decision in *Rayco*, the probate court did not abuse its discretion in awarding attorney fees to the Appellees.

{¶ 72} Accordingly, we overruled the fourth assignment of error.

**{¶ 73}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Probate Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

KATHLEEN ANN KEOUGH, P.J., CONCURS (WITH LEAD OPINION AND WITH SEPARATE CONCURRING OPINION);
EILEEN T. GALLAGHER, J., CONCURS (WITH SEPARATE CONCURRING OPINION)

EILEEN T. GALLAGHER, J., CONCURRING:

**{¶ 74}** I concur with the majority opinion but write separately to draw attention to our abuse-of-discretion standard, which is evolving into a more discerning test for reversal.

**{¶ 75}** For decades, appellate courts have cited *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), and held that the term "abuse of discretion" involves more than an error of law or judgment and that it implies the court's attitude is unreasonable, arbitrary, or unconscionable. *See, e.g., State v. Bertram*, 4th Dist. Scioto No. 21CA3950, 2022-Ohio-2488, ¶ 46; *Bank of Am., N.A.*

*v. Darkadakis*, 7th Dist. Mahoning No. 14 MA 0076, 2016-Ohio-7694, ¶ 76; *Stakich v. Russo*, 8th Dist. Cuyahoga No. 99488, 2014-Ohio-2526, ¶ 23, citing *Tourlakis v. Beverage Distribs., Inc.*, 8th Dist. Cuyahoga No. 81222, 2002-Ohio-7252, ¶ 31.

{¶ 76} However, the standard set forth in *Blakemore*, which was decided in 1983, is inconsistent with the standard more recently articulated in *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 39. In *Johnson*, the court explicitly held that "courts lack the discretion to make errors of law, particularly when the trial court's decision goes against the plain language of a statute or rule." In *Johnson*, the court made a distinction between errors of law and other matters over which a court has discretionary authority. The court held that "'[n]o court—not a trial court, not an appellate court, nor even a supreme court—has the authority, within its discretion, to commit an error of law.'" *Id.* at ¶ 38, quoting *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 26 (2d Dist.). The court further explained:

> "The concept of 'abuse of discretion' as the basis for determining 'error' of the trial court connotes the right to exercise a sound discretion. Conversely, where a specific action, ruling or order of the court is required as a matter of law, involving no discretion, the test of 'abuse of discretion' should have no application."

*Id.* at ¶ 37, quoting *Rohde v. Farmer*, 23 Ohio St.2d 82, 89, 262 N.E.2d 685 (1970).

{¶ 77} Since errors of law are outside the scope of a court's discretion, they are not subject to the abuse-of-discretion standard of review. *Id.* Rather, *Johnson* holds that errors of law are reviewed de novo. *Id.* ¶ 38. Thus, *Johnson* implicitly

overruled *Blakemore*'s definition of an "abuse discretion" to the extent that it defined an "abuse of discretion" as more than an error of law.

{¶ 78} With respect to matters within the court's discretion, *Johnson* instructs that "[a]n abuse of discretion occurs when 'a court exercis[es] its judgment, in an unwarranted way[.]'" *Johnson* at ¶ 35. *Johnson* does not elaborate on what constitutes an "unwarranted" exercise of discretion, but other recent cases have held that an abuse of discretion "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *State v. Montgomery*, Slip Opinion No. 2022-Ohio-2211, ¶ 135, quoting *Blakemore* at 219. *See also Davis v. McGuffey*, 167 Ohio St.3d 1442, 2022-Ohio-2163, 189 N.E.3d 806, ¶ 12 (Kennedy and Fischer, JJ., dissenting). Thus, that aspect of *Blakemore*'s "abuse of discretion" standard defining an "abuse of discretion" as unreasonable, arbitrary, or unconscionable is still valid and applicable to those decisions that are within the court's discretion and may be used to determine whether a court's judgment was "unwarranted."

{¶ 79} The majority's decision on attorney fees presents a mixed question of law and discretion. Whether the trial court had legal authority to award attorney fees in the first instance is a question of law. As noted by the majority, in *Rayco Mfg. v. Murphy, Rogers, Sloss & Gambel*, 8th Dist. Cuyahoga No. 106714, 2019-Ohio-3756, we held that, as an exception to the general rule that prevailing parties may not recover attorney fees, "attorney fees can be awarded as compensatory damages to the prevailing party on a motion to enforce a settlement agreement when

the fees are incurred as a direct result of a breach of the settlement agreement." *Id.* at ¶ 20.

{¶ 80} Having determined that attorney fees were legally permissible under the circumstances, we next had to determine whether the attorney-fee award itself was warranted. And because the attorney-fee award was reasonable, there was no abuse of discretion. I, therefore, concur with the majority opinion, but write separately with the hope that other courts will reexamine the abuse-of-discretion standard and apply the more nuanced standard articulated in *Johnson*.